

Signed/Docketed
May 13, 2013

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**
**The Honorable Michael E. Romero**

| | |
|---|---|
| In re: ) | |
| ) | Case No. 11-35762 MER |
| DAVID E. McDONALD ) | |
| JULIE F. McDONALD ) | Chapter 13 |
| ) | |
| Debtors. ) | |

**ORDER**

This matter comes before the Court on the *Motion for Reconsideration of the Order Converting the Case to Chapter 13 or, in the Alternative, Motion to Re-Convert the Case to Chapter 7* (the "Motion to Reconsider"), filed by former Chapter 7 trustee Jeffrey A. Weinman ("Weinman") and Allen & Vellone, P.C. ("A&V") as counsel for Weinman and an administrative creditor, and the Response thereto filed by debtors David McDonald and Julie McDonald (collectively, the "Debtors").

At issue is whether the Debtors have a right to convert their case from Chapter 7 to Chapter 13 under 11 U.S.C. § 706,[1] and whether the Debtors are precluded from converting their case under the United States Supreme Court's *Marrama* opinion and related case law.[2] Weinman and A&V assert the Debtors may not convert their case from Chapter 7 because they are acting in bad faith. The alleged bad faith centers on the Debtors' initial non-disclosure of a book of business and an interest in certain insurance policy renewal commissions earned pre-petition. The Court has considered the evidence and legal argument presented by the parties, and hereby makes the following findings of fact and conclusions of law.[3]

---

[1] Unless otherwise noted, all future statutory references in the text are to Title 11 of the United States Code.

[2] *See Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365 (2007); *In re Nordin*, 2012 WL 1614742 (Bankr. D. Colo. May 9, 2012) (slip copy), *aff'd*, *In re Nordin*, 2013 WL 936370 (10th Cir. BAP 2013); *In re Castro*, 2011 WL 3205789 (Bankr. D. Colo. July 27, 2011); *In re Lane*, 2011 WL 3205782 (Bankr. D. Colo. July 26, 2011); *In re Ortega*, 434 B.R. 889 (Bankr. D. Kan 2010).

[3] During the course of trial, the Court admitted Trustee's Exhibits 1, 2, 3, 4, 5, 6, 24 through 31, 36, 41, 42, 43, 44, 46, 47, 48, 49, 50, 51 through 65, 68, 69 and 70, and the Stipulated Facts (Docket No. 92) into evidence. The Court also took judicial notice of the

## JURISDICTION

The Court has jurisdiction over the Motion to Dismiss under 28 U.S.C. §§ 1334(a) and (b) and 28 U.S.C. §§ 157(a) and (b). This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) because it concerns the administration of the estate.

## BACKGROUND

### A. The Colorado Agency

David McDonald ("David") and John P. Kozlowski ("Kozlowski") each own 50% of The Colorado Agency, Inc., a business selling insurance products.[4] David also owns a client list ("book of business"), the precise value of which is disputed.[5]

David's employment with The Colorado Agency is the Debtors' sole source of income,[6] and is received in the form of commissions based on the following: 1) any renewal of an insurance policy written by David ("Renewal Commission"); 2) any new business, *i.e.*, any new insurance policy written by David ("New Business Commission"); and 3) any endorsement of a policy, i.e., a change in a policy resulting in increase in the insurance premiums due from the insured ("Endorsement Commission").[7] The percentage of the commissions to be paid is determined by the particular contract with the corresponding insurance company.[8]

### B. The Debtors' Bankruptcy Case

On October 31, 2011, the Debtors filed their voluntary Chapter 7 petition through their initial counsel, Atom Ariola-Tirella ("Tirella"). Weinman was appointed as the Chapter 7 trustee of the Debtors' bankruptcy estate ("Estate").

---

Debtors' filing of their 2010 Federal Tax Return with this Court under seal (Docket No. 108).

[4] Stipulated Facts, at ¶ 2.

[5] Stipulated Facts, at ¶ 11-12.

[6] Trustee's Exhibit 1, Schedule I. According to the Debtors' initial Schedule I, Julie McDonald does not earn income from any source, and the Debtors care for three dependents, a son and two daughters.

[7] *Id.*

[8] Stipulated Facts, at ¶ 7.

As a result of filing for bankruptcy relief, David's interest in his book of business and his 50% interest in The Colorado Agency became property of the Estate.[9]

Following the initial meeting of creditors, Weinman filed his Notice of Possible Dividends, and hired A&V as special counsel to investigate assets and alleged transfers involving David and The Colorado Agency.[10]  On March 9, 2012, Weinman, through A&V, filed *ex parte* Motions for Orders Authorizing Rule 2004 Examinations of David and The Colorado Agency, and Compelling Production of Documents by David and The Colorado Agency.[11]  Both Motions were granted on March 16, 2012.[12]  In the interim, the Debtors received their discharge on March 15, 2012.

After receiving the subpoenas in connection with the 2004 examinations, the Debtors hired new bankruptcy counsel.  On April 23, 2012, William A. Morris ("Morris") entered his appearance on behalf of the Debtors.  Within three weeks after Morris entered the case, David produced documents responsive to Weinman's document requests, the adequacy of which was disputed.[13]  On June 7, 2012, Weinman conducted the 2004 examinations of David and The Colorado Agency.[14]  Approximately one month after the examinations, Weinman filed his Motion for Order Compelling Debtor to Turn Over Property of the Estate ("Motion to Compel").[15]

C.   **Debtors' Conversion from Chapter 7 to Chapter 13**

Ten days after Weinman filed his Motion to Compel, the Debtors filed the following pleadings: 1) Objection to the Motion to Compel; 2) Amended Schedules A, B, C, I and J; 3) Motion to Convert Case from Chapter 7 to Chapter 13; and 4) a proposed Chapter 13 plan.[16]  The Court entered the Order Converting Chapter 7 Case to Chapter 13 ("Conversion Order") on the same

---

[9] Stipulated Facts, at ¶¶ 6, 13.

[10] Trustee's Exhibits 5 and 6.

[11] Stipulated Facts, at ¶ 2.

[12] Stipulated Facts, at ¶ 3.

[13] *See* Stipulated Facts, at ¶ 4.

[14] Stipulated Facts, at ¶ 5.

[15] Stipulated Facts, at ¶ 14.

[16] Stipulated Facts, at ¶ 15; *see also* Docket Nos. 52, 53, 54 and 55.

day.[17] Weinman subsequently filed his Report of No Distribution and was discharged from his duties as trustee.

On July 20, 2012, Weinman and A&V filed the instant Motion to Reconsider, seeking reversal of the Court's Conversion Order, an order for this case to proceed under Chapter 7, and authorizing Weinman to pursue claims against David to recover property of the Estate. In the alternative, Weinman seeks reconversion of the case to Chapter 7 pursuant to § 1307(c). In support, Weinman and A&V argue as follows:

- The Court's Conversion Order was "not proper and is the type of a [sic] mistake that should be corrected pursuant to FED R. CIV. P. 60" because the Court summarily granted the Motion to Convert without providing an opportunity to be heard, and without the Debtors providing proper notice to parties in interest who might object to the conversion under FED R. BANKR. P. 2002(a)(4);

- Under *Marrama*, the Debtors' converted their case in bad faith because their initial Statement of Financial Affairs and Schedules are false, David knowingly concealed property of the Estate, and the Debtors moved to convert only after Weinman initiated proceedings against him to recover property of the Estate; and

- The Debtors cannot confirm a Chapter 13 plan because the proposed plan does not satisfy the best interest of creditors test based on the Debtors' stated value for the book of business.[18]

In response, the Debtors argue as follows:

- Weinman's procedural argument is without merit because this Court routinely converts cases without requiring twenty-one day notice under FED R. BANKR. P. 2002(a)(4);

- The Debtors have an absolute right to convert on the facts of this case, and there is no bad faith under *Marrama*. The Debtors assert they never intended to hide assets, and the subject property was discussed at length with Weinman at their meeting of creditors. The Debtors allege any errors or deficiencies in their initial filing were due to the inexperience or incompetence of their previous counsel, Tirella. After retaining Morris as counsel, the Debtors filed Amended Schedules to correct any previous

---

[17] Order Converting Case (Docket No. 56).

[18] *See* Motion to Reconsider (Docket No. 65).

- errors, and sought conversion of their case to Chapter 13 in good faith; and

- The Debtors assert the proper test for bad faith conversion is the totality of the circumstances test, not whether they proposed a Chapter 13 plan in good faith. The Debtors argue the totality of the circumstances indicate the Debtors did not convert their case in bad faith.

An evidentiary hearing was held on this matter, and the Court took the issue of reconsideration of the Conversion Order under advisement. The Court also ordered the Chapter 13 plan confirmation process be held in abeyance pending resolution of the Motion to Reconsider.[19]

## DISCUSSION

For conversion from Chapter 7 to Chapter 13, the relevant text of § 706 provides in pertinent part:

> (a) The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title. Any waiver of the right to convert a case under this subsection is unenforceable.
> . . .
>
> (c) The court may not convert a case under this chapter to a case under chapter 12 or 13 of this title unless the debtor requests or consents to such conversion.
>
> (d) Notwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter.[20]

Pre-*Marrama* cases generally refer to § 706(a) as a debtor's "absolute right" to convert.[21] Post-*Marrama*, the "absolute right" to convert under § 706(a) is limited by § 706(d), with the focus on whether "the debtor may be a

---

[19] Notice of Vacated Hearing (Docket No. 94).

[20] § 706.

[21] The Senate and House Reports explain § 706(a) "gives the debtor [the] one[-time] absolute right of conversion of a liquidation case to a reorganization or individual repayment plan case." H.R. REP. NO. 595, 95th Cong., 1st Sess. 380 (1977); S. REP. NO. 989, 95th Cong., 2nd Sess. 94 (1978).

debtor under such chapter." Section 706(d) implicates § 109(e), which in turn provides:

> Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $383,175 and noncontingent, liquidated, secured debts of less than $1,149,525, or an individual with regular income and such individual's spouse, except a stockbroker or a commodity broker, that owe, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts that aggregate less than $383,175 and noncontingent, liquidated, secured debts of less than $1,149,525 may be a debtor under chapter 13 of this title.[22]

Although these criteria are rarely disputed in conversion matters, a debtor cannot convert a Chapter 7 case to Chapter 13 without first satisfying these threshold statutory requirements. Once satisfied, in the absence of an objection to conversion for bad faith, a Chapter 7 case may proceed under Chapter 13.

### A. Impact of *Marrama* on Conversion from Chapter 7 to Chapter 13

In *Marrama*, a Chapter 7 debtor's schedules contained misleading or inaccurate statements.[23] Of primary concern, the debtor omitted his ownership interest in his principal asset, a house in Maine with substantial value, and failed to disclose his transfer of the property to a newly-created trust for no consideration only seven months preceding filing.[24] Marrama later admitted the purpose of transferring his home within one year of filing was to protect his property from creditors.[25] After the Chapter 7 trustee announced his intention to recover the Maine property, Marrama filed a motion to convert his case to Chapter 13.[26] The bankruptcy court denied the debtor's request to convert to Chapter 13, and the Bankruptcy Appellate Panel for the First Circuit, the First Circuit Court of Appeals and the United States Supreme Court affirmed.[27]

---

[22] § 109(e).

[23] *Marrama, supra*, at 369 n.3. Marrama asserted a homestead exemption in rental property, and did not disclose an anticipated tax refund.

[24] *Id.* at 368-69. Marrama was the sole beneficiary of the trust which owned the house.

[25] *Id.* at 368.

[26] *Id.* at 368.

[27] *Id.* at 370-71.

The *Marrama* Court held the "absolute right" to convert a case from Chapter 7 to Chapter 13 under § 706(a) is possessed only by "[t]he class of honest but unfortunate debtors" who seek "the chance to repay their debts should they acquire the means to do so."[28] The class of eligible Chapter 13 debtors does not include an "atypical" debtor whose bad faith demonstrates he is not entitled to relief afforded to a good faith debtor.[29] The Supreme Court concluded a debtor's right to convert a case under § 706(a), when coupled with bad faith conduct, is not absolute.[30]

The *Marrama* Court also recognized the bad faith analysis under § 1307(c) is the same as the analysis under § 706(d).[31] In other words, the same conduct considered and found sufficient to deny conversion of a Chapter 7 case to a Chapter 13 case, would be sufficient to convert a Chapter 13 case back to Chapter 7.[32] On this point, the Supreme Court reasoned:

> [T]he broad description of the right as "absolute" fails to give full effect to the express limitation in subsection (d). The words "unless the debtor may be a debtor under such chapter" expressly conditioned Marrama's right to convert on his ability to qualify as a "debtor" under Chapter 13.

---

[28] *Id.* at 374.

[29] *Id.* at 374-75.

[30] *Id.*

[31] *Id.* at 374. The Supreme Court concluded "the broad authority granted to bankruptcy judges" under § 105(a) authorizes "denial of a motion to convert filed under § 706 in lieu of a conversion order that merely postpones the allowance of equivalent relief and may provide a debtor with an opportunity to take action prejudicial to creditors." *Id.* at 375.

[32] More recently, the Bankruptcy Court for the District of Kansas found bad faith constitutes "cause" for purposes of § 1307(c), so a debtor may forfeit the right to convert to Chapter 13 by bad faith conduct. *In re Ortega*, 434 B.R. at 893 (the Court also recognized denial of conversion is a harsh result and should be applied with reluctance in the presence of extreme circumstances.). In Colorado, Judge Sidney B. Brooks has stated a debtor's conduct must be atypical to qualify as "bad faith" conduct sufficient to support dismissal of a Chapter 13 case or to deny conversion of case to Chapter 13 from Chapter 7." *In re Castro*, 2011 WL 3205789, at *2 (citing *Marrama*); *In re Lane*, 2011 WL 3205782, at *2 (citing *Marrama*).

> There are at least two possible reasons why Marrama may not qualify as such a debtor, one arising under § 109(e) of the Code, and the other turning on the construction of the word "cause" in § 1307(c).[33]

The Supreme Court determined conversion under § 706(a) is modified by § 706(d), thereby bootstrapping § 1307(c) "cause" considerations to a determination of eligibility for conversion to Chapter 13 when a debtor's conversion is challenged for bad faith, so as to avoid duplicative proceedings.[34] As a result, post-*Marrama*, eligibility for conversion from Chapter 7 to Chapter 13 under § 706(a) "is dependent on two things: first, whether the debtor is eligible to be a debtor under chapter 13 under 11 U.S.C. § 109(e); and second, whether the case, if converted, would be dismissed under 11 U.S.C. § 1307(c)."[35]

### 2. *Burden of Proof After Marrama*

The *Marrama* Court did not address the burden of proof between parties in a contested conversion hearing. However, courts have generally held the debtor seeking conversion bears the burden of demonstrating compliance with § 706, and a party seeking dismissal or conversion of a Chapter 13 case for "cause" under § 1307(c) has the burden of showing the debtor's lack of good faith based on the totality of the circumstances.[36]

The Bankruptcy Court for the District of Utah explained this shifting burden of proof as follows:

> [U]nder *Marrama*, a debtor seeking to convert a case from chapter 7 has an initial burden to show that the debtor has not previously converted the case to chapter 7, and that the debtor is otherwise

---

[33] *Marrama*, 549 U.S. at 372.

[34] *Marrama*, 549 U.S. at 365-66 ("[A] ruling that an individual's Chapter 13 case should be dismissed or converted to Chapter 7 because of pre-petition bad-faith is tantamount to a ruling that the individual does not qualify as a debtor under Chapter 13.").

[35] *In re Meunghee Joung*, 2011 WL 2413633, at *2 (Bankr. D.N.M. June 10, 2011).

[36] *See, e.g., In re Gier*, 986 F.2d 1326, 1329 (10th Cir. 1993) (following *In re Love*); *In re Love*, 957 F.2d 1350, 1355 (7th Cir. 1992) (stating that burden of showing good faith is not on debtor because unlike section 1325(a)(3), section 1307(c) "does not specifically require that a debtor file a petition in good faith"); *Alt v. United States (In re Alt)*. 305 F.3d 413, 420 (6th Cir. 2002) (the party seeking dismissal has burden to show debtor's lack of good faith); *Sullivan v. Solimini (In re Sullivan)*, 326 B.R. 204, 211 (1st Cir. BAP 2005) ("[U]nder § 1307(c), the objecting creditor has the burden of proof, while under § 1325(a)(3), it is the debtor's burden.").

> eligible to be a debtor under the new chapter . . . . Once the debtor establishes these requirements, the burden is placed on an objecting party to show that the debtor is attempting to convert the case in bad faith. In this case, the parties do not dispute [the debtors satisfied their initial burden]. Thus, the Court should grant the Debtor's Motion to Convert unless the objecting parties can show that the Debtor's Motion is filed in bad faith under *Marrama*.[37]

This Court joins those courts adopting the burden-shifting standard for determinations of *Marrama* based objections to conversion from Chapter 7 under § 706.

### B. Post-*Marrama* Procedure for Objections to Conversion Pursuant to 11 U.S.C. § 706

As a threshold matter, the Court is unpersuaded by the procedural and due process arguments advanced in the Motion to Reconsider. While the Debtors are correct in stating this Court converts cases without requiring twenty-one day notice under FED R. BANKR. P. 2002(a)(4), the Court only converts those cases which comply with the Bankruptcy Code and Local Bankruptcy Rules governing conversion from Chapter 7 to Chapter 13. Thus, a brief review of the controlling rules is instructive.

Specifically, Local Bankruptcy Rule 1017-1 provides in pertinent part as follows:

> **(a) Conversion From Chapter 7 to Chapter 11, 12 or 13:**
>
> **(1) No Prior Conversion:** To convert a case from chapter 7 to chapter 11, 12 or 13 pursuant to 11 U.S.C. § 706(a), where eligible, the debtor must file a Motion for Voluntary Conversion in accordance with FED. R. BANKR. P. 1017(f)(2), **whereupon the Clerk will, if the case has not been previously converted under 11 U.S.C. §§ 1112, 1208 or 1307, enter a virtual text order effecting the conversion.**
>
> **(2) Prior Conversion:** In the event that the case has been previously converted, the debtor must comply with 11 U.S.C.

---

[37] *In re George Love Farming, LC*, 366 B.R. 170, 179 (Bankr. D. Utah 2007). *See also In re Meunghee Joung*, 2011 WL 2413633, at *4; *In re FMO Associates II, LLC*, 402 B.R. 546, 551 (Bankr. E.D.N.Y. 2009); *In re Broad Creek Edgewater, LP*, 371 B.R. 752, 757 (Bankr. D.S.C. 2007).

> § 706(c) and file a motion for conversion with notice to creditors pursuant to L.B.R. 9013-1.
>
> . . .
>
> **(d) Reconsideration:** Any party in interest may file a motion to reconsider the conversion of the case within the time specified by FED. R. BANKR. P. 9023 and 9024.[38]

In the absence of a prior conversion therefore, the Court is required to grant voluntary conversions from Chapter 7 to Chapter 13 when the debtor is eligible and all statutory requirements are satisfied.[39]

Following a routine conversion under § 706(a), the Local Rule expressly provides any party in interest may timely seek reconsideration of a virtual order converting a case.[40] As the Bankruptcy Appellate Panel for the Tenth Circuit recognized, "[t]he procedural entry of a conversion order, immediately upon the filing of a motion to convert, should not preclude a party who opposes conversion from having the bankruptcy court consider the merits of an objection allowed by *Marrama*."[41] Local Bankruptcy Rule 1017-1 contemplates this exact issue, and provides a means to obtain due process. When a case is converted from Chapter 7 to Chapter 13, L.B.R. 1017-1(d) authorizes timely filed requests to reconsider conversion orders alleging bad faith under *Marrama*. This procedure safeguards due process, and provides parties objecting to alleged bad faith conversion with an opportunity to be heard.

In the instant matter, the Debtors satisfied their initial burden of proof by establishing the statutory eligibility requirements of § 109(e) because the case hat not been converted previously, because as of their petition date, the total of the scheduled unsecured debts was $170,514 (or less than $383,175) and secured debts totaled $637,927 (or less than $1,149,525), and because they themselves requested conversion.[42] As a result, the Court concludes the

---

[38] L.B.R. 1017-1 (emphasis added). The commentary for this rule clearly indicates "[t]his L.B.R. is intended to address issues raised by *Marrama v. Citizens Bank of Massachusetts (In re Marrama)*, 127 S.Ct. 1105 (2007)."

[39] *See* § 706; *see also* Discussion, Section A., *supra*.

[40] The Court notes the process under this Local Bankruptcy Rule does not impact the shifting burden of proof discussed herein at Section A.2., *supra*.

[41] *See Nordin*, 2013 WL 936370, at *5 (concluding the bankruptcy court did not abuse its discretion in amending its conversion order and denying the debtor's motion to convert).

[42] *See* Trustee's Exhibit 1, at Summary of Schedules, Schedule D and Schedule F.

Debtors complied with the statutory requirements for conversion under § 706(a), (c) and (d). No evidence was presented to contradict this finding, and Weinman and A&V did not dispute the Debtors eligibility under § 109(e). Based on the Debtors' statutory eligibility to convert, the Court entered its Conversion Order.[43] Therefore, the Court's Conversion Order was neither improper nor entered by "mistake."

Moreover, due process has not been offended. The Motion to Reconsider was timely pursuant to L.B.R. 1017-1(d), the Debtors timely filed a response, and the Court held an evidentiary hearing on the issue of conversion. There is no doubt the parties were provided a meaningful opportunity to be heard regarding the intertwined issues of conversion and alleged bad faith. Accordingly, the Court rejects any argument the Conversion Order was granted by "mistake" or without proper notice and an opportunity to be heard under FED R. BANKR. P. 2002(a)(4). In the absence of a legitimate challenge to procedure or due process, the Court shall turn to the merits of this dispute.

**C.     The Motion to Reconsider**

A party may seek relief from an order or judgment under FED. R. CIV. P. 59 or 60(b).[44] The Tenth Circuit Court of Appeals has stated the following regarding such motions:

> The Federal Rules of Civil Procedure recognize no "motion for reconsideration." *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991), *cert. denied*, 506 U.S. 828, 113 S.Ct. 89, 121 L.Ed.2d 51 (1992). Instead, this court construes such a filing in one of two ways. If the motion is filed within ten days of the district court's entry of judgment, the motion is treated as a motion to alter or amend the judgment under [FED. R. CIV. P.] 59(e). *Id.* Alternatively, if the motion is filed more than ten days after the entry of judgment, it is considered a motion seeking relief from the judgment under [FED. R. CIV. P.] 60(b). *Id.*[45]

FED. R. CIV. P. 59 and 60 apply to cases under the Bankruptcy Code pursuant to FED. R. BANKR. P. 9023 and 9024. Although FED R. CIV. P. 59(e) provides a motion to alter or amend a judgment must be filed within 28 days of the entry

---

[43] Order Converting Case (Docket No. 56).

[44] *Hatfield v. Board of County Commissioners for Converse County*, 52 F.3d 858, 861 (10th Cir. 1995); *see also Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991).

[45] *Id.* at 861.

of the judgment, FED. R. BANKR. P. 9023 shortens the deadline to file motions under Rule 59 to "no later than 14 days after entry of judgment."[46]

Based on the deadlines described above by the Tenth Circuit Court of Appeals, the Motion to Reconsider seeks relief under the incorrect rule. The Motion to Reconsider was filed on July 20, 2012, within ten days of entry of the Conversion Order. Although the Motion to Reconsider requests relief under FED. R. CIV. P. 60(b),[47] the Court must evaluate the Motion to Reconsider under the more lenient standards of Rule 59.

　　　　1.　　FED. R. CIV. P. 59

FED. R. CIV. P. 59(a) provides:

> (1) Grounds for New Trial. The court may, on motion, grant a new trial on all or some of the issues–and to any party–as follows:
>
> 　　. . .
>
> 　　(B) after a nonjury trial, for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court.[48]

"Grounds warranting a motion to reconsider [under Rule 59(e)] include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice."[49] Rule 59(e) motions are appropriate where a court has misapprehended the facts, a party's position, or controlling law.[50] However, a

---

[46] FED. R. BANKR. P. 9023.

[47] Relief from a judgment under Rule 60(b) falls within the discretion of the Court, such relief is extraordinary, and should only be granted in exceptional circumstances. *LaFleur v. Teen Help*, 342 F.3d 1145, 1153 (10th Cir. 2003); *Amoco Oil Co. V. United States Department of Environmental Protection*, 231 F.3d 694, 697 (10th Cir. 2000); *Bud Brooks Trucking, Inc. v. Bill Hodges Trucking Co., Inc.*, 909 F.2d 1437, 1440 (10th Cir. 1990). The burden of proof on a movant is a high one, because a Rule 60(b) motion is not a substitute for an appeal. *Davis v. Kansas Dept. of Corrections*, 507 F.3d 1246, 1248 (10th Cir. 2007).

[48] FED. R. CIV. P. 59(a)(1)(B).

[49] *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (citing *Brumark Corp. v. Samson Resources Corp.*, 57 F.3d 941, 948 (10th Cir. 1995)).

[50] See *Paraclete*, 204 F.3d at 1012.

Rule 59(e) motion "is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing."[51]

Weinman and A&V have not argued any change in controlling law or any new evidence previously unavailable. Accordingly, the Court will focus on the only possible ground for reconsideration of the Debtors' conversion to Chapter 13 - the need to correct clear error or prevent manifest injustice. Examining whether the Debtors converted their case in bad faith falls within this framework.

### 2. The Debtors' Alleged Bad Faith Conduct

The issue before the Court is whether the Debtors engaged in bad faith conduct. The burden of proof shifted to Weinman and A&V to show such conduct, and unless they can demonstrate the Debtors' Motion to Convert was filed in bad faith, the conversion from Chapter 7 to Chapter 13 will stand. At the hearing on conversion, the Court heard testimony from Weinman, David, and Kozlowski, and finds each of these witnesses were credible.

The issue of bad faith is a question of fact determined by the totality of the circumstances,[52] and this includes both pre-petition conduct and post-petition conduct during the Chapter 7 case.[53] Despite the infirmities in their initial filing and the document production issues, the Court finds the Debtors' conduct after hiring competent counsel is pivotal in determining a lack of bad faith in this case.

The Debtors conceded their initial Schedules and Statement of Financial Affairs contain inaccuracies and omissions, but assert any errors were the result of incompetent representation. In their initial Statement of Financial Affairs, the Debtors listed gross income for David as follows: $130,036 in 2009; $108,692 in 2010; and $49,522 in 2011 (year-to-date).[54] However, according to the

---

[51] Id. (citing Van Skiver v. United States, 952 F.2d 1241, 1243 (10th Cir. 1991)).

[52] Gier, 986 F.2d at 1329 (concluding "in determining whether a Chapter 13 petition has been filed in bad faith under § 1307(c), the bankruptcy court must consider the 'totality of the circumstances.'").

[53] See Marrama, 549 U.S. at 374 (finding "prepetition bad-faith conduct, including fraudulent acts committed in an earlier Chapter 7 proceeding, is tantamount to a ruling that the individual does not qualify as a debtor under Chapter 13.").

[54] Trustee's Exhibit 1. Based on the Debtors' 2010 tax return, the Debtors' stated gross income in 2010 is incorrect. The tax return reflects the gross income for The Colorado Agency in 2010 was $108,629. However, the Debtors' personal gross income in 2010 was only $39,040. See Trustee's Exhibit 69; Debtor's 2010 tax return filed under seal (Docket

Debtors' 2010 federal tax returns,[55] the gross income for The Colorado Agency, not the individual Debtors, was $108,692 and after deducting business expenses the net profit for The Colorado Agency was $42,040. It is clear the stated gross income was that of The Colorado Agency, not the Debtors individually. The Debtors blame Tirella for reporting the gross income of The Colorado Agency instead of the Debtors' personal gross income in their initial filing.

The Debtors disclosed an interest in The Colorado Agency in their Statement of Financial Affairs, but did not specify a percentage of ownership.[56] The Debtors also disclosed Koslowski as a 50% "partner," but did not identify the business of which he was a partner.[57] While this information is incomplete, it does not demonstrate an intent to conceal The Colorado Agency from Weinman. Indeed, these partial disclosures led to questioning at the Debtors' meeting of creditors regarding the full nature of these assets.

In their initial Schedule B, the Debtors did not disclose David's book of business or his 50% interest in The Colorado Agency.[58] David again blames Tirella for not cross-checking the Statement of Financial Affairs with Schedule B. While the Court is less troubled by the non-disclosure of the 50% interest given the partial disclosure in the Statement of Financial Affairs, the omission of the book of business causes concern. Weinman asserts the Debtors intentionally omitted the book of business from their Schedule B. However, David testified he informed Tirella of the book of business, and was unaware the book could even be liquidated. In weighing the credibility of David's testimony, and based on his explanation, the Court finds insufficient evidence to support a finding the Debtors intentionally omitted the book of business.

There are also concerns with David's disclosed income. The Debtors indicated in their initial Schedule I that David earns income in the amount of $4,259.20 per month, and the Debtors have monthly expenses of $4,480.[59] There was also no disclosure of David's interest in any Renewal Commissions earned pre-petition, but paid post-petition. The parties stipulated David

---

No. 108).

[55] Trustee's Exhibit 69; Debtor's 2010 tax return filed under seal (Docket No. 108).

[56] *Id.*

[57] *Id.*

[58] *Id.*

[59] Trustee's Exhibit 1, Schedules I and J.

received and continues to receive Renewal Commissions post-petition.[60] Weinman asserts the 25% non-exempt portion of any Renewal Commissions earned pre-petition but paid post-petition is property of the Estate. Again, income was disclosed, but was understated.

Finally, in connection with the document production, Weinman and A&V point to the Debtors' delay in providing documents and non-disclosure of certain commission statements as evidence of bad faith conduct. Specifically, over the course of two months, Weinman made multiple informal requests to David, through Tirella, for three years of documents relating to Renewal Commissions along with certain business and personal tax returns. None of the requested documents were provided to Weinman while the Debtors were represented by Tirella. The lack of production resulted in Weinman hiring A&V to pursue Rule 2004 examinations of David and The Colorado Agency, obtaining orders authorizing the examinations, and subpoenaing certain documents.

The Debtors responded to Weinman's document requests less than a month after Morris entered his appearance. Although the adequacy of the provided documentation was disputed, Weinman obtained any missing company records from Kozlowski. In addition, David testified The Colorado Agency did not file 2011 tax returns, and the Debtors' 2010 tax returns were filed under seal. Shortly after responding to document requests, Weinman and A&V held Rule 2004 examinations in early June 2012. The next month, Weinman filed his Motion for Turnover, seeking additional documentation and turnover of the non-exempt portion of David's Renewal Commissions. Immediately thereafter, the Debtors, through new counsel, took steps to correct any errors and omissions from their initial filing and convert to Chapter 13.

The Debtors filed Amended Schedules A, B and C to reflect the declining value of their home, David's 50% ownership interest in The Colorado Agency valued at $5,000, and the book of business valued at $50,000. The valuation of David's 50% interest is supported by the evidence. Kozlowski testified that prior to the Debtors filing for bankruptcy relief, he offered David $5,000 in exchange for his 50% interest in The Colorado Agency. Kozlowski made the same offer to Weinman post-petition.

With respect to the book of business, the Debtors' Amended Schedule B states the book is declining in value annually.[61] Weinman asserts the Debtors

---

[60] Stipulated Facts, at ¶ 8.

[61] Trustee's Exhibit 36, Schedule B. David maintained most of his business is non-transferrable based on each particular insurance contract. The description of his book of business further states as follows:

value of $50,000 undervalues David's book of business. While David testified he informed Tirella of a $50,000 book of business, Weinman asserted in the Motion to Reconsider that the 2011 value of David's book of business was approximately $78,300. Weinman maintains the current value is $169,822.50 based on the industry standard multiplier of 1.5 times annual gross commissions.

Kozlowski confirmed the industry standard multiplier, but he offered no testimony or evidence regarding liquidation value. Neither did Weinman or A&V. Rather, Kozlowski testified he never offered to purchase the book of business from David or Weinman and had no idea how much he would offer for David's book of business. The Court declines to determine the value of the book of business at this time, as no testimony, expert or otherwise, was provided on the liquidation value for this type of book of business. Although the Court considered the presented industry standard valuation, the value of a book of business in a liquidation scenario is more realistic in a bankruptcy case.

The Debtors also Amended Schedules I and J to indicate David earns monthly income of $9,057.66, and the Debtors have monthly expenses in the total amount of $8,444.55.[62] These amendments reflect income that was twice as high as initially disclosed, but also reflect expenses were understated because the initial filing did not reflect any business expenses. Further, David testified his income earned with The Colorado Agency includes commissions derived from non-transferrable life and health insurance policies. Any income received from David's Renewal Commissions, New Business Commissions and Endorsement Commissions will be used to fund the Debtors' Chapter 13 Plan.

Based on the totality of the circumstances in this specific case, the Court finds the Debtors did not seek conversion in bad faith. Weinman and A&V failed to meet their burden of proving the Debtors intended to conceal assets, and there is no evidence the Debtors transferred any assets in this case (pre or post-petition). The Court emphasizes blaming former counsel is not a *carte blanche* exception to bad faith. Bad faith determinations turn on the facts of

---

Annual gross for transferrable portion of book:
2011 - $78,300
2010 - $87,500
2009 - $102,900
Value previously listed as zero. Debtor has maintained that this book of business has no liquidation value because it cannot be transferred while insolvent under duress of bankruptcy and without consent of underwriters.

*Id.*

[62] *See* Trustee's Exhibit 36, Amended Schedules I and J.

each individual case, and simply hiring new counsel does not alleviate the standards under *Marrama*. However, in the instant case, there is both sufficient evidence of improved documentation once new counsel was hired, and insufficient evidence of intent to conceal assets or bad faith.

Should the Court find the Debtors are not precluded from conversion to Chapter 13, the Motion to Reconsider alternately seeks reconversion to Chapter 7 under § 1307(c) "for cause" under the same standards as § 1325(a). Along with their Motion to Convert, the Debtors also filed a proposed Chapter 13 plan. While proposing a Chapter 13 plan in good faith under § 1325(a) is a factor to consider in the totality of the circumstances analysis, it is not a stand-alone issue in the context of dismissal under § 1307(c) for alleged bad faith conversion to Chapter 13.[63]

The *Marrama* Court noted a bankruptcy court's authority to deny conversion for bad faith should be exercised only in "extraordinary cases . . . in light of the fact that lack of good faith in proposing a Chapter 13 plan is an express statutory ground for denying plan confirmation."[64] The Supreme Court embraced the Seventh Circuit's distinction between the standards for good faith in proposing a Chapter 13 plan under section 1325(a)(3) and for dismissing or converting a case under § 1307(c), which has a more stringent standard for lack of good faith in light of the dire consequences of dismissal.[65]

Weinman and A&V urge the Court to apply the *Flygare*[66] factors to the current proposed Chapter 13 plan, but the Court declines to reach the Chapter 13 plan confirmation issues at this time. *Marrama*'s pragmatic approach permits the Court to look ahead and consider factors "for cause" under § 1307(c).[67]

---

[63] *See Marrama*, 549 U.S. at 375 n.11, 381-82; *see also Love*, 957 F.2d at 1355-56.

[64] *Marrama*, 549 U.S. at 374-75, n.11.

[65] *Id.* (citing *In re Love*, 957 F.2d 1350, 1356 (7th Cir. 1992)) ("Because dismissal is harsh . . . the bankruptcy court should be more reluctant to dismiss a petition . . . for lack of good faith than to reject a plan for lack of good faith under Section 1325(a)."). The addition of § 1325(a)(7) by BAPCPA lends further support for the view that a more stringent test should be applied under § 1307(c). Under § 1325(a)(7), courts have authority to take the less drastic step of denying confirmation of a chapter 13 plan if the petition is not filed in good faith, rather than dismissing the case. *See* § 1325(a)(7) ("[T]he court shall confirm a plan if the action of the debtor in filing the petition was in good faith.").

[66] *Flygare v. Boulden*, 709 F.2d 1344 (10th Cir. 1983); *see also In re Rasmussen*, 888 F.2d 703, 704 (10th Cir. 1989).

[67] *See Marrama v. Citizens Bank of Mass. (In re Marrama)*, 430 F.3d 474, 482 (1st Cir. 2005) (citing *Sullivan v. Solimini (In re Sullivan)*, 326 B.R. 204, 212 (1st Cir. BAP 2005))

Evidence of inaccurately prepared schedules and financial statements, or false testimony at the meeting of creditors or a Rule 2004 examination, are encompassed in the totality of the circumstances determination for conversion under § 1307(c).[68] However, material misstatements and other attempts to "mislead the bankruptcy court or manipulate the bankruptcy process,"[69] rather than mistake or excusable neglect, should be the focus of such an inquiry.[70] As set forth above, the Court does not find the Debtors intended to mislead the Court, and therefore, shall allow the Debtors to proceed under Chapter 13.

## CONCLUSION

Based on the foregoing,

IT IS ORDERED the Motion to Reconsider is DENIED and the Debtors' case shall proceed under Chapter 13. The Court will set a hearing on confirmation of the Debtors' pending Chapter 13 plan and any objections thereto by separate order.

Dated May 13, 2013                         BY THE COURT:

                                           Michael E. Romero
                                           United States Bankruptcy Judge

---

[68] *Id.*

[69] *Id.*

[70] *See In re Odette*, 347 B.R. 60, 65 (Bankr. E.D. Mich. 2006); *Condon v. Smith (In re Condon)*, 358 B.R. 317, 328-29 (6th Cir. BAP 2007).