

Signed/Docketed
March 31, 2014

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO
### The Honorable Michael E. Romero

In re:                                    )
                                          )  Case No. 11-35762 MER
DAVID E. McDONALD                         )
JULIE F. McDONALD                         )  Chapter 13
                                          )
Debtors.                                  )

## ORDER

This matter comes before the Court on the *Motion to Reconsider Order Dated May 13, 2013 to Convert to Chapter 7, and/or to Compel Production of Documents* (the "Second Motion to Reconsider"), filed by administrative priority creditor Allen & Vellone, P.C. ("A&V") and counsel for former Chapter 7 trustee Jeffrey A. Weinman ("Weinman"). David McDonald and Julie McDonald (collectively, the "Debtors") never filed a formal written response to the Second Motion to Reconsider. However, the Debtors opposed reconversion at a hearing on the matter. At the same hearing, the Chapter 13 Trustee joined in the request to reconvert this case to Chapter 7.

In part one of this saga, the Court concluded the Debtors were eligible under 11 U.S.C. § 109(e)[1] to convert their case from Chapter 7 to Chapter 13.[2] The Court also determined, after applying the United States Supreme Court's *Marrama* opinion and its progeny, the Debtors did not seek conversion in bad faith based on the totality of the circumstances and the evidence presented at that time.[3] The Second Motion to Reconsider compels a sequel, wherein this Court must revisit its previous ruling regarding bad faith as a result of the Debtors' post-petition (and post-conversion) conduct, and the Debtors' violation of several Court orders.

---

[1] Unless otherwise noted, all future statutory references in the text are to Title 11 of the United States Code.

[2] *See In re McDonald*, No. 11-35762 MER, 2013 WL 1969266 (Bankr. D. Colo. May 13, 2013).

[3] *See id.*

## JURISDICTION

The Court has jurisdiction over the Second Motion to Reconsider under 28 U.S.C. §§ 1334(a) and (b) and 28 U.S.C. §§ 157(a) and (b).  This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) because it concerns the administration of the estate.

## BACKGROUND[4]

### A.    The Colorado Agency

David McDonald ("David") and John P. Kozlowski ("Kozlowski") each own 50% of The Colorado Agency, Inc., a business selling insurance products.[5] David also owns a client list ("book of business"), the precise value of which is disputed.[6]  It is customary in the industry that such books of business may be bought and sold.[7]

David's employment with The Colorado Agency is the Debtors' sole source of income,[8] which is received in the form of commissions based on the following: 1) renewal of an insurance policy written by David ("Renewal Commission"); 2) new business, *i.e.*, any new insurance policy written by David ("New Business Commission"); and 3) endorsement of a policy, *i.e.*, a change in a policy resulting in increase in the insurance premiums due from the insured ("Endorsement Commission").[9]  David continues to receive Renewal Commissions, New Business Commissions, and Endorsement Commissions

---

[4]    The background facts provided in this Order are based on the Court's record and the pleadings filed in this case, including but not limited to the parties' Stipulated Facts filed September 12, 2012 (Docket No. 92) ("First Stipulated Facts"), the parties' Stipulated Facts filed June 24, 2013 (Docket No. 149) ("Second Stipulated Facts"), the Court's Order dated May 13, 2013 (Docket No. 126) (hereinafter referred to as "Order Denying First Motion to Reconsider"), and the statements made to this Court on the record.  The Court hereby incorporates all previous findings and conclusions for the purposes of this Order.

[5]  First Stipulated Facts, at ¶ 2.

[6]  First Stipulated Facts, at ¶ 11-12.

[7]  Second Stipulated Facts, at ¶ 9.

[8]  According to the Debtors' initial Schedule I, Julie McDonald does not earn income from any source, and the Debtors care for three dependents – a son and two daughters.

[9]  *Id.*

post-petition.[10]  The percentage of the commissions to be paid is determined by the particular contract with the corresponding insurance company.[11]

**B.**     **Pre-Conversion Events**

On October 31, 2011, the Debtors filed their voluntary Chapter 7 petition through their initial counsel, Atom Ariola-Tirella ("Tirella").  Weinman was appointed as the Chapter 7 trustee of the Debtors' bankruptcy estate ("Estate"). As a result of filing for bankruptcy relief, David's interest in his book of business and his 50% interest in The Colorado Agency became property of the Estate.[12]

Following the initial meeting of creditors, Weinman filed his Notice of Possible Dividends, and hired A&V as special counsel to investigate assets and alleged transfers involving David and The Colorado Agency.  On March 9, 2012, Weinman, through A&V, filed *ex parte* Motions for Orders Authorizing Rule 2004 Examinations of David and The Colorado Agency, and Compelling Production of Documents by David and The Colorado Agency.[13]  Both Motions were granted on March 16, 2012.[14]  In the interim, the Debtors received their discharge on March 15, 2012.

After receiving the subpoenas in connection with the 2004 examinations, the Debtors hired new bankruptcy counsel.  On April 23, 2012, William A. Morris ("Morris") entered his appearance on behalf of the Debtors.  Within three weeks after Morris entered the case, David produced documents responsive to Weinman's document requests, the adequacy of which was disputed.[15]  On June 7, 2012, Weinman conducted the 2004 examinations of David and The Colorado Agency.[16]  Approximately one month after the examinations, Weinman filed his Motion for Order Compelling Debtor to Turn Over Property of the Estate ("Motion to Compel").[17]

---

[10]  Second Stipulated Facts, at ¶ 6.

[11]  First Stipulated Facts, at ¶ 7.

[12]  First Stipulated Facts, at ¶¶ 6, 13.

[13]  First Stipulated Facts, at ¶ 2.

[14]  First Stipulated Facts, at ¶ 3.

[15]  *See* First Stipulated Facts, at ¶ 4.

[16]  First Stipulated Facts, at ¶ 5.

[17]  First Stipulated Facts, at ¶ 14.

## C.      Conversion from Chapter 7 to Chapter 13

Eight days after Weinman filed his Motion to Compel, on July 10, 2012, the Debtors filed the following pleadings: 1) Objection to the Motion to Compel; 2) Amended Schedules A, B, C, I and J; 3) Motion to Convert Case from Chapter 7 to Chapter 13 ("Conversion Motion"); and 4) a proposed Chapter 13 Plan.[18] The Court entered the Order Converting Chapter 7 Case to Chapter 13 ("Conversion Order") on the same day.[19]   Weinman subsequently filed his Report of No Distribution and was discharged from his duties as trustee.

On July 20, 2012, Weinman (through his counsel A&V) filed the First Motion to Reconsider, seeking reversal of the Court's Conversion Order, reconversion to Chapter 7, and authorization for Weinman to pursue claims against David to recover property of the Estate; or in the alternative, seeking reconversion of the case to Chapter 7 pursuant to § 1307(c).  Following an evidentiary hearing held May 13, 2013, the Court entered its Order Denying First Motion to Reconsider.[20]

In that order, the Court noted the Debtors' initial Schedules and Statement of Financial Affairs contained several inaccuracies and omissions, and the Debtors were not cooperative with document production while represented by Tirella.  After hiring Morris, the Debtors took steps to amend their initial disclosures and produce some documentation to Weinman.   In weighing the evidence presented at the time, the Court determined the Debtors were eligible under § 109(e) to convert their case to Chapter 13, and found as follows regarding bad faith:

> Based on the totality of the circumstances in this specific case, the Court finds the Debtors did not seek conversion in bad faith.  Weinman and A&V failed to meet their burden of proving the Debtors intended to conceal assets, and there is no evidence the Debtors transferred any assets in this case (pre or post-petition).  The Court emphasizes blaming former counsel is not a *carte blanche* exception to bad faith. Bad faith determinations turn on the facts of each individual case, and simply hiring new counsel does not alleviate the standards under *Marrama*.   However, in the instant case, there is both sufficient

---

[18]  First Stipulated Facts, at ¶ 15; *see also* Docket Nos. 52, 53, 54 and 55.

[19]  Order Converting Case (Docket No. 56).

[20]  *McDonald*, 2013 WL 1969266.

evidence of improved documentation once new counsel was hired, and insufficient evidence of intent to conceal assets or bad faith.[21]

The day after the Court issued its Order Denying First Motion to Reconsider, Morris filed a Certificate of Non-Contested Matter in connection with his Motion to Withdraw as Counsel for the Debtors.  One week later, Morris (the Debtors' second attorney in this bankruptcy case) was permitted to withdraw as counsel for the Debtors.[22]

## D.    Post-Conversion Pleadings

The Debtors proposed four different Chapter 13 plans during their bankruptcy case, but as set forth below, none of the plans were confirmable as a matter of law.  As it relates to the reconversion issues, the Court believes a brief review of each proposed plan and the intervening dispute regarding document production is instructive.

### 1.    *Initial Chapter 13 Plan filed July 10, 2012, through Morris.*[23]

The Debtors' initial Chapter 13 plan ("Initial Plan") proposed to pay unsecured creditors (owed more than $170,000) the total amount of $51,313 over five years.  The Initial Plan also contained the following representations:

(a) $50,000 value for the book of business (50% ownership);
(b) $5,000 costs of sale for the book of business;
(c) $9,100 earnings from monthly commissions;
(d) $1,000 value for a timeshare and sale costs of $80 for the same; and
(e) One administrative claim for Morris in the amount of $6,000.

The Chapter 13 Trustee filed an objection to confirmation of the Initial Plan.[24]  After the Court entered its Order Denying First Motion to Reconsider, A&V filed its objection to confirmation of the Debtors' Initial Plan, indicating the Initial Plan did not provide for its administrative priority claim, and alleging the Initial Plan did not satisfy the best interests of creditors test and was not filed in good faith.  The Court granted leave for A&V to file the late objection.

---

[21]  *Id.* at *9.

[22]  Order Allowing Withdrawal of Counsel (Docket No. 135).

[23]  Initial Plan (Docket No. 54).

[24]  Trustee's Objection (Docket No. 73).

2.   *Amended Chapter 13 Plan filed June 4, 2013, pro se.*[25]

Before a confirmation hearing could be held, on June 4, 2013, the *pro se* Debtors filed an Amended Chapter 13 Plan ("First Amended Plan").  The First Amended Plan reduced the distribution to unsecured creditors from $51,313 to $3,065 and reduced the commitment period from five years to five months.  The Debtors also indicated for the first time they intended to surrender their residence.  The First Amended Plan also contained the following representations:

(a) $20,000 value for the book of business (100% ownership);
(b) $5,000 costs of sale for the book of business;
(c) $6,370 earnings from monthly commissions;
(d) $1,000 value for a timeshare, sale costs of $80 and liens against the timeshare totaling $2,641; and
(e) No administrative claims or expenses.

On July 8, 2013, the Court held the first evidentiary confirmation hearing in this case.  As set forth in the Court's Minute Order dated July 8, 2013, the Court determined the First Amended Plan was not confirmable as a matter of law, and denied confirmation of the Debtors' First Amended Plan and all previously filed plans.[26]  The Order further provided "the Debtors [with] one final opportunity to propose and file a plan which is confirmable on its face and in full compliance with the Bankruptcy Code, failing which shall establish cause for immediate conversion of the within case to Chapter 7 without further notice or a hearing."[27]  The next amended plan was to be filed no later than August 5, 2013.  This deadline was later extended to August 28, 2013, to allow the parties to litigate their dispute over A&V's administrative claim.

In addition, at the July 8th hearing, A&V raised concerns about the Debtors dissipating assets to the detriment of the Estate.  In order to protect the Estate from the alleged dissipation of assets, the Court ordered the Debtors to provide to the Chapter 13 Trustee and A&V copies of "all bank statements for any accounts opened post-petition by David McDonald, Julie McDonald and/or The Colorado Agency from the date any such account was opened through July 9, 2013."[28]  The Court also ordered the Debtors to provide to the Chapter 13 Trustee and A&V an accounting of all funds payable from The Hartford (an insurance company which was holding funds for The Colorado Agency), and

---

[25]  First Amended Plan (Docket No. 141).

[26]  Minute Order dated July 8, 2013 (Docket No. 155).

[27]  *Id.*

[28]  *Id.*

ordered The Hartford not to disburse any funds to the Debtors or The Colorado Agency until ordered otherwise.[29]  The Court has not yet lifted this prohibition on The Hartford.

       3.    *Debtors' Violations of Orders Compelling Production of Documents and Orders to File Amended Chapter 13 Plans*

Despite the clear language in the Court's Order dated July 8, 2013, requiring "all bank statements for any accounts opened post-petition by David McDonald, Julie McDonald and/or The Colorado Agency from the date any such account was opened through July 9, 2013," and an accounting of any and all post-petition funds payable from The Hartford, the Debtors only provided bank statement summaries for a single account.  Further, in lieu of an accounting, the Debtors requested A&V and the Trustee review David's commission statements from The Hartford.  In response, A&V filed its *Motion to Compel Debtors to Comply with July 8, 2013 Order and Produce Documents.*[30]  Upon reviewing the matter, the Court entered an Order finding the Debtors in violation of the Court's Order dated July 8, 2013.  The Court further ordered the Debtors **for the second time** to provide to the Chapter 13 Trustee and A&V on or before August 7, 2013, all detailed bank statements for all accounts from the date each account was opened through the end of July 2013.[31]

Rather than comply with the Court's Order Granting Motion to Compel dated July 31, 2013, the Debtors filed a Motion for Extension of Time to Respond to the Motion to Compel on August 5, 2013.  The Debtors provided no explanation for failing to produce the Court-ordered documentation and accounting in the interim period, and only stated they needed the extension of time because "the Debtors are out of town and unavailable until [August 12, 2013]."[32]  When August 12, 2013, arrived, rather than produce the required documents, David filed a Motion to Reconsider the Order Granting Motion to Compel.  In his Motion to Reconsider, David made false representations to this Court, including *inter alia*, the following:

       •   "Mr. Kozlowski is not a shareholder of The Colorado Agency. See exhibit A- the Shareholder Ledger. He has never been a shareholder of The Colorado Agency."

---

[29]  *Id.*

[30]  A&V's Motion to Compel (Docket No. 161).

[31]  Order Granting Motion to Compel (Docket No. 162).

[32]  Debtors' Motion For Extension of Time (Docket No. 166).

- "The Debtors have complied with the original order by the Court to produce bank statements and The Hartford accounting for the Chapter 13 Trustee and [A&V]."[33]

On August 19, 2013, A&V filed its Response to Debtors' two motions.

Two days later, the Court held an evidentiary hearing, and denied the Debtors' Motion for Extension of Time and Motion to Reconsider. Further, the Court, **for the third time**, ordered the Debtors to produce detailed bank statements and an accounting on or before the close of business on August 23, 2013, failing which the Court would reconsider its Order Denying First Motion to Reconsider.[34] The Court also approved A&V's administrative claim.

August 23rd came and went, and the Debtors did not produce the Court-ordered documents and accounting. Instead, on August 26, 2013, the Debtors filed a *pro se* Motion to Extend Time to File Amended Plan because they hired new counsel, Stephen E. Berken ("Berken"). Because the Debtors were allegedly represented by counsel, the Court denied this motion without prejudice for Berken to file a motion seeking an extension of time as the Debtors' new counsel. Two days later, on the extended date the second amended Chapter 13 Plan was due, Berken filed a motion on behalf of the Debtors seeking another extension of time to file the second amended plan. The Court, weary of the Debtors' gamesmanship, granted the Debtors a final extension of time over A&V's objection, and set a final deadline of September 11, 2013, to file the notorious second amended plan.[35]

In response to the Debtors' third failure to comply with Court's previous orders to produce certain documents and accounting, on September 6, 2013, A&V filed its Second Motion to Reconsider. The Second Motion to Reconsider detailed the unproduced documents and accounting, sought another order compelling the Debtors to produce the same, and sought reconversion of this case to Chapter 7 based on the Debtors' repeated violations of Court orders to produce documents and failure to file a confirmable Chapter 13 plan. The Debtors never filed a response to the Second Motion to Reconsider.

---

[33]  Debtors' Motion to Reconsider (Docket No. 167). David's statement regarding his alleged 100% ownership interest in The Colorado Agency directly contradicts the Court's previous findings in the Order Denying Motion to Reconsider, the representation made in the First Stipulated Facts, at ¶ 2, and the repeated representations made to this Court in other pleadings that David holds a 50% interest in The Colorado Agency.

[34]  Minute Order dated August 21, 2013 (Docket No. 172).

[35]  Order Setting Hearing (Docket No. 187).

On September 9, 2013, the Court entered another Order, setting a hearing on the Second Motion to Reconsider for September 13, 2013, and finding as follows:

> To date, this Court ordered the Debtors to produce copies of all detailed bank statements for all accounts on three separate occasions. *See* Minute Order dated July 8, 2013 (Docket No. 155); Order Granting Motion to Compel dated July 31, 2013 (Docket No. 162); and Minute Order dated August 21, 2013 (Docket No. 172). The Debtors failed to comply with the first two orders, and according to A&V, the Debtors have not complied with the latest order.
> . . .
>
> The Court FURTHER ORDERS the Debtors to bring two "sets of legible un-redacted copies of each and every page of all detailed bank statements showing itemized monthly transactions, including all "enclosures" thereto, for any and all accounts opened post-petition by the Debtors and/or the Colorado Agency, jointly or separately, from the date such account was opened through September 7, 2013. The Debtors' failure to comply with this Order and attend this hearing in person, coupled with their failure to comply with the previous orders of this Court, shall establish cause for the immediate reconsideration of the Court's Order dated May 8, 2013 and the reconversion of this bankruptcy case from Chapter 7 to Chapter 13.[36]

At the hearing held September 13, 2013, the Court granted A&V's request for production of documents, and David tendered two sets of un-redacted copies of Guaranty Bank and Trust bank statements for two separate accounts ending in "1975" and "1496." Berken confirmed on the record the Debtors only opened those two accounts post-petition. The Court held the Second Motion to Reconsider in abeyance until further order of the Court, pending the confirmation hearing set for October 17, 2013, regarding the Debtors' Second Amended Chapter 13 Plan ("Second Amended Plan") filed September 11, 2013.

> 4.    *Second Amended Chapter 13 Plan filed September 11, 2013, through Berken.*[37]

The Debtors' Second Amended Plan increased the distribution to unsecured creditors from $3,065 to $87,766 and increased the commitment

---

[36]  Order Setting Hearing (Docket No. 187).

[37]  Second Amended Plan (Docket No. 192).

period from five months to three years.  This Second Amended Chapter 13 Plan also contained the following representations:

> (a) $92,100 value for the book of business (100% ownership);
> (b) No costs of sale for the book of business;
> (c) $9,100 earnings from monthly commissions;
> (d) One administrative claim for Debtors' new counsel, Berken, in the amount of $6,000; and
> (e) An unsecured claim of $44,389 for A&V's allowed fees and costs, but the claim is treated in Class 4 and not as an administrative claim.

The Debtors also indicated they surrendered their residence on January 1, 2012, and surrendered their timeshare on October 1, 2013.  The Second Amended Plan improperly states Debtors are eligible for a discharge.[38]

The Chapter 13 Trustee filed an objection to confirmation of the Debtors' Second Amended Plan.[39]  A&V also filed an objection to confirmation of the Debtors' Second Amended Plan.[40]

>    5.    *Debtors' Motion to Vacate Discharge filed September 16, 2013.*[41]

The Debtors received their discharge under Chapter 7 on March 15, 2012. A year and a half later, after filing their Second Amended Plan, the Debtors filed a Motion to Vacate Discharge, seeking to set aside the Chapter 7 discharge in order to be eligible for a discharge in their Chapter 13 bankruptcy, since this case was converted post-discharge.  The Debtors cited no authority for such relief and, after hearing arguments, the Court denied the Debtor's Motion to Vacate Discharge.[42]

---

[38]  *See* discussion *infra* Part D.5.

[39]  Trustee's Objection (Docket No. 203).

[40]  A&V's Objection (Docket No. 204).

[41]  Debtors' Motion to Vacate Discharge (Docket No. 201).

[42]  *See* Minute Order dated October 17, 2013 (Docket No. 210).  The Court may revoke a bankruptcy discharge under the narrow circumstances set forth in § 727(d), which generally permits the Court to revoke a discharge which has been fraudulently obtained. The Court may also vacate a discharge under FED. R. BANKR. P. 9024 incorporating FED. R. CIV. P. 60.  *Disch v. Rasmussen*, 417 F.3d 769, 779-80 (7th Cir. 2005). However, the Debtors did not allege any of the grounds outlined in Rule 60(b) in their Motion to Vacate Discharge. Absent a sufficient showing, the Court could not even consider vacating their discharge.

6.    *Third Amended Chapter 13 Plan filed October 15, 2013, through Berken.*[43]

Two days before the scheduled confirmation hearing on the Debtors' Second Amended Plan, the Debtors filed their third Amended Chapter 13 Plan ("Third Amended Plan"), which reduced the distribution to unsecured creditors from $87,766 to $406 over five years.  This Third Amended Chapter 13 Plan also contained the following representations:

(a) $46,050 value for the book of business (50% ownership);
(b) $4,605 costs of sale for the book of business;
(c) $9,100 earnings from monthly commissions;
(d) An administrative claim for Berken in the amount of $6,000, and an administrative claim for Morris in the amount of $1,000; and
(e) An administrative claim of $44,389 for A&V's allowed fees and costs.

While the Second Amended Plan indicated the Debtors surrendered their residence on January 1, 2012, and surrendered their timeshare on October 1, 2013, the Third Amended Plan indicated they surrendered their residence and their timeshare on September 1, 2012.  The Third Amended Plan also improperly states Debtors are eligible for a discharge.  On October 24, 2013, the Debtors voluntarily withdrew their Third Amended Plan.

At the confirmation hearing, the Court denied the Debtors' Motion to Vacate Discharge.[44]  With respect to the confirmation issues regarding the Debtors' Second Amended Plan and the Third Amended Plan, and the issue of reconversion to Chapter 7, the Court took these matters under advisement.  One week later, the Debtors filed a response 1) voluntarily withdrawing their Third Amended Plan, 2) challenging the standing of A&V to object to confirmation and participate in the Chapter 13 plan process, and 3) attempting to bolster the Debtors' stated value for its book of business in the Second Amended Plan (by this Court's count, the fourth different valuation asserted by the Debtors since entry of the Order Denying First Motion to Reconsider).

## DISCUSSION

The issue before the Court is whether the Debtors' bankruptcy case should be reconverted from Chapter 13 to Chapter 7.  As set forth herein, the Court holds this case should be reconverted for three independent reasons.

---

[43]  Third Amended Plan (Docket No. 209).

[44]  Minute Order dated October 17, 2013 (Docket No. 210).

First, the Court finds the Debtors violated multiple Court orders, establishing cause to reconvert this case to Chapter 7.  Following the withdrawal of Morris, the Debtors, acting *pro se*, repeatedly evaded orders of this Court requiring the Debtors to propose a Chapter 13 plan that could be confirmed on its face.  At the eleventh hour, and through their third attorney, the Debtors still failed to propose a legitimate Chapter 13 plan that could be confirmed as a matter of law.

Second, in weighing the applicable factors, the Court finds the Debtors filed their Conversion Motion in bad faith under § 1307(c).

Third, in weighing the applicable factors, the Court finds the Debtors filed their Second Amended Plan in bad faith under § 1325(b).

On a related note, the Court is compelled to provide its assessment of credibility.  Mrs. McDonald has not appeared in Court since this case was converted to Chapter 13, yielding to David who has appeared in Court and filed pleadings, both on his own and through counsel.  Importantly, the Court finds David was evasive and uncooperative with the Court while appearing *pro se* at each hearing held after the Order Denying First Motion to Reconsider.[45]  Although the Court previously found David to be a credible witness, this Court must retract its previous finding.  David's subsequent conduct shielding documents, coupled with his inconsistent and false statements in pleadings and on the record, support a finding David cannot be trusted and is not credible.

## A.   A Creditor Holding an Administrative Priority Claim Has Standing to Object to Confirmation of a Chapter 13 Plan and Participate in the Confirmation Process

As a threshold matter, the Court must dispose of the Debtors' challenge to the standing of A&V to object to confirmation and participate in the Chapter 13 plan confirmation process.  Section 1324(a) provides "[a] party in interest may object to confirmation of the plan."[46]  The Bankruptcy Code does not define the phrase "party in interest," but "[t]he phrase is generally understood to include all persons whose pecuniary interests are directly affected by the

---

[45]  Although Mrs. McDonald has not appeared at any hearings since the case was converted to Chapter 13, the Debtors' proposed Chapter 13 plans and other pleadings filed with the Court were signed by Mrs. McDonald and/or filed on her behalf by David or through counsel.

[46]  § 1324(a).

bankruptcy proceedings."[47]  The United States Bankruptcy Appellate Panel for the Tenth Circuit has extended this definition "to include anyone who has an interest in the property to be administered and distributed under the Chapter 13 plan."[48]

On May 17, 2013, A&V filed their First and Final Application for Approval of Attorneys' Fees and Costs ("First and Final Application"), seeking approval of fees and costs, and allowance of the same as an administrative priority claim. Following an evidentiary hearing, the Court overruled the Debtors' objection and granted the First and Final Application.  The Court approved and awarded fees and costs of A&V in the total of $44,388.56 as an allowed administrative priority claim pursuant to § 503(b)(1)(A) and (b)(2), and § 507(a)(1)(C).[49]  As an administrative creditor, A&V clearly has a pecuniary interest in the Debtor's bankruptcy case, and an interest in the administration of property in the Debtors' Chapter 13 proceeding.  A&V has continued to object to confirmation because the Debtors have failed to properly provide for this administrative claim.  A&V's need to participate in the confirmation process is particularly evident here, where the Debtors have not provided properly for this administrative claim in any version of their Chapter 13 plan.  For these reasons, the Court concludes A&V has standing to object to confirmation and participate in this Chapter 13 case.

## B.     Reconversion to Chapter 7 is Warranted Because the Debtors Violated Court Orders

After denying confirmation of the Debtors' initial Plan and First Amended Plan, the Court required the Debtors "to propose and file a plan which is confirmable on its face and in full compliance with the Bankruptcy Code, failing which **shall establish cause for immediate conversion of the within case to Chapter 7 without further notice or a hearing.**"[50]  The original deadline to propose this amended plan was August 5, 2013.  This deadline was extended

---

[47]   *Nintendo Co., Ltd. v. Patten (In re Alpex Computer Corp.)*, 71 F.3d 353, 356 (10th Cir. 1995) (citing *Valley Bank & Trust Co. v. McGee (In re Hutchinson)*, 5 F.3d 750, 756 (4th Cir. 1993)).  *See also In re Armstrong*, 303 B.R. 213, 219 (10th Cir. BAP 2004) ("party in interest" has been applied outside of § 1109(b) and it means "all persons whose pecuniary interests are directly affected by the bankruptcy proceedings"); *In re Perez*, 415 B.R. 445, n.32 (Bankr. D. Colo. 2009).

[48]   *In re Davis*, 239 B.R. 573, 579 (10th Cir. BAP 1999).

[49]   *See* Minute Order dated August 21, 2013 (Docket No. 172).

[50]   *See* Minute Order dated July 8, 2013 (Docket No. 155) (emphasis added); Order and Notice of Continued Hearing dated July 25, 2013 (Docket No. 159) (emphasis added).

two more times, up to September 11, 2013.  Despite repeated opportunities and
extensions of time, the Debtors failed to propose a Chapter 13 plan which is
confirmable on its face.  After the Court entered its Order Denying First Motion
to Reconsider, David was present at five different hearings and had ample
opportunities to be heard.  The Debtors ignored the verbal warnings of the Court
made on the record, and ignored the written orders demanding the Debtors
present a cognizable Chapter 13 plan which could even be considered as a
matter of law.  The Court finds the Debtors were put on sufficient notice that
their failure to comply with this Court's orders would result in immediate
reconversion to Chapter 7.

The operative Chapter 13 plan is the Debtors' Second Amended Plan filed
September 11, 2013.[51]  The Court finds the Second Amended Plan is not
confirmable on its face as a matter of law for the following reasons.

First, the Second Amended Plan states the Debtors are "eligible for a
discharge[.]"[52]  Pursuant to § 1328(f), the Court cannot grant a discharge under
Chapter 13 if the Debtors received a discharge "in a case filed under chapter 7,
11, or 12 of this title during the 4-year period preceding the date of the order
for relief under this chapter."[53]  The Debtors received a discharge on March 15,
2012, during the pendency of their Chapter 7 case, well within the applicable
four-year period.  The Debtors are therefore not eligible for a discharge in
Chapter 13, and the Second Amended Plan cannot be confirmed as a matter of
law.

Second, the Second Amended Plan fails the "best-interest-of-creditors"
test under § 1325(a)(4).[54]  As the Chapter 13 Trustee points out, the Debtors'
Chapter 7 Reconciliation shows Class 4 general unsecured creditors would
receive $87,530 if Debtors' case was a Chapter 7 case.  However, the Second
Amended Plan proposes to pay Class 4 claims only $43,377.  In addition, the
value of the Estate's 50% interest in the book of business remains a problem for

---

[51]  The Second Amended Plan was sent out on proper notice, and A&V and the
Trustee timely filed objections to confirmation of the Second Amended Plan.  Although the
Debtors filed their Third Amended Plan, that plan was never sent out on notice and, in any
event, the Debtors voluntarily withdrew their Third Amended Plan after the confirmation
hearing held October 17, 2013.

[52]  Second Amended Plan, at Part I.B.

[53]  § 1328(f)(1).

[54]  Section 1325(a)(4) states the Court shall confirm a plan if "the value, as of the
effective date of the plan, of property to be distributed under the plan on account of each
allowed unsecured claim is not less than the amount that would be paid on such claim if the
estate of the debtor were liquidated under chapter 7 of this title on such date[.]"

confirmation.  This is the largest asset of the Estate, yet the Debtors have changed positions on its value and ownership in the company over and over in this case.  In their initial Schedule B, the Debtors did not disclose David's book of business or his 50% interest in The Colorado Agency.[55]  In their first Amended Schedule B, the Debtors listed a value of $50,000 for the book of business, but also stated the "Debtor has maintained that this book of business has no liquidation value because it cannot be transferred . . . ."[56]  The Debtors later stipulated the book of business "has value."[57]  In their First Amended Plan, the Debtors decreased the value for the book of business to only $20,000 and claimed a 100% ownership interest in the same.  Then, the Debtors filed their Second Amended Plan and listed a $92,100 value for the book of business with a 100% ownership interest.  The Debtors also filed a second Amended Schedule B, listing a value of $92,100 for the book of business, and again providing the statement the book of business has no liquidation value because it cannot be transferred.[58]  However, before retaining Berken, the Debtors filed their Second Stipulated Facts with A&V, stipulating "[i]t is customary in the industry that such books of business may be bought and sold."[59]  Then, in their Third Amended Plan, the Debtors decreased the value again, claiming the book of business was worth only $46,050, and flipped their position now claiming a 50% ownership in the book of business.  These inconsistent positions demonstrate the Debtors' valuation of the book of business is not credible.

In contrast, A&V asserts the value of the book of business is at least $117,000 (not the $92,100 listed in the Second Amended Plan) based on the Guaranty Bank & Trust bank account statements provided by the Debtors and the gross commissions received by David.  The Court finds A&V's valuations credible, and thus, the Debtors have understated the value of the book of business in their Second Amended Plan.  Combined with other assets, A&V asserts creditors would receive approximately $192,000 in a Chapter 7 within one year (resulting in a rough net distribution to unsecured creditors in the amount of $70,000 or 45.8%, after payment in full of all administrative expenses and priority claims).  The Second Amended Plan only provides for $43,377 to unsecured claims.  Therefore, the Court finds the Second Amended Plan fails the best-interest-of-creditors test because creditors would not receive more in chapter 13 than under Chapter 7.

---

[55] *McDonald*, 2013 WL 1969266, at *7.

[56] Amended Schedule B (Docket No. 53).

[57] First Stipulated Facts, at ¶ 12.

[58] Amended Schedule B (Docket No. 188).

[59] Second Stipulated Facts, at ¶ 9 (Docket No. 149).

Third, the Second Amended Plan fails to fully provide for the Department of Education/Federal Loan Servicing student loan claim, or A&V's administrative priority claim.  The Department of Education/Federal Loan Servicing filed a proof of claim in the unsecured amount of $4,320.32 for an unpaid student loan.[60] The Debtors did not object to this claim, but the Second Amended Plan does not provide for it, and incorrectly indicates there are no student loans in Part V.E. of the Second Amended Plan.  The Debtors also failed to provide properly for the treatment of A&V's allowed administrative priority claim in Part IV.A. of the Second Amended Plan.  Although the Second Amended Plan lists A&V's claim as an administrative claim under the plan analysis, the classification and treatment section treats the claim as a Class 4 unsecured claim.[61]  Berken stated at the confirmation hearing held in October 2013, that this was a programing error. No matter what the cause of the error, the Second Amended Plan cannot be deemed to be confirmable on its face in light of the failure to provide correct treatment for these claims.

Fourth, the Second Amended Plan cannot be administered as written because the plan provides for payments over five years, but the number of payments listed only covers 59 months.[62]  Although this is only a one month difference, the Trustee asserts she cannot administer the plan without the last monthly payment.  Also, the Second Amended Plan only provides for a 36 month commitment period for payments to Class 4 creditors.[63]  This is inconsistent with a five-year plan.  Thus, on its face, the Second Amended Plan cannot be confirmed.

Fifth, the Debtors filed a Third Amended Plan to fix some of the issues with the Second Amended Plan.  The Debtors stated the Third Amended Plan made the following changes:

a. Payments under the amended plan will extend to 60 months instead of 59.

b. The payment to unsecured creditors will be reduced. Debtors will file an Amended Schedule B and C to reflect that they only have a one-half interest in the Colorado Agency's book of business. As such, the reconciliation will reflect a much smaller payment to unsecured creditors.

---

[60]  Proof of Claim No. 16-1.

[61]  *See* Second Amended Plan, at Parts I.A. and IV.D.

[62]  Second Amended Plan, at Part III.A.1.

[63]  Second Amended Plan, at Part IV.D.

c. Payments to the Chapter 7 Trustee will be changed pursuant to this Court's Order allowing an administrative claim in the amount of $44,388.56.[64]

Thus, through their Certificate and Motion to Determine Notice filed with this Court through counsel, the Debtors effectively admitted the Second Amended Plan was not confirmable on its face. The deficiencies in the Second Amended Plan necessitated filing the Third Amended Plan, which supports the conclusion the Second Amended Plan was not confirmable as written.

The Court's record does not reveal that anyone other than the Debtors are culpable for their failures to comply with the Court's orders to file a confirmable Chapter 13 plan. The Debtors have never apologized for their failures to comply with Court orders, or even offered a reasonable explanation as to why they were unable to perform their obligations in this case. The Debtors received ample notice from this Court, and were fully warned of the possibility of reconversion of this case to Chapter 7 for failure to comply with the written Order dated July 8, 2013, and the Order and Notice of Continued Hearing dated July 25, 2013. The Debtors also failed to heed the Court's warnings at the hearings held August 21, 2013 and September 13, 2013. The Debtors' repeated failures to comply with Court orders supports the conclusion that sufficient cause exists to reconvert this case to Chapter 7. Other than reconversion of this case, the Court believes there is no lesser sanction available under the circumstances, as it would be pointless to impose a financial sanction on these Debtors. Reconversion is appropriate to enforce this Court's own orders, as well as to protect the integrity of the judicial process.

For these reasons, the Court finds the Debtors failed to propose a plan that is confirmable on its face, in violation of the Court's previous orders. The Debtors have been on notice for months that failing to file a confirmable plan will establish immediate cause to reconvert this bankruptcy case. Accordingly, the Court finds cause exists to reconvert this case from Chapter 13 to Chapter 7.

## C.    Reconversion to Chapter 7 is Warranted Because the Debtors Filed the Conversion Motion and Second Amended Plan in Bad Faith

The Court must re-examine whether the Debtors sought conversion of this case in bad faith under § 1307(c) and whether the Debtors filed their Second Amended Plan in good faith under § 1325(a)(3). As set forth below, the Court finds bad faith on both counts, resulting in two more independent grounds warranting reconversion of this case to Chapter 7. The Court set forth the

---

[64]  Debtors' Certificate and Motion to Determine Notice, at ¶ 6 (Docket No. 205).

framework for the *Marrama* analysis in great detail in its Order Denying First Motion to Reconsider, and does not find a compelling reason to repeat the entire analysis here.[65]  However, the Second Motion to Reconsider seeks relief under FED. R. CIV. P. 60(b), as opposed to the First Motion to Reconsider which sought relief under FED. R. CIV. P. 59.  Also, the Court did not reach the issue of filing a Chapter 13 plan in bad faith in its previous Order.  Thus, the Court must now confront these issues.

A party may seek relief from an order or judgment under FED. R. CIV. P. 59 or 60(b).[66]  The Tenth Circuit Court of Appeals has stated the following regarding such motions:

> The Federal Rules of Civil Procedure recognize no "motion for reconsideration." *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991), *cert. denied*, 506 U.S. 828, 113 S.Ct. 89, 121 L.Ed.2d 51 (1992).  Instead, this court construes such a filing in one of two ways.  If the motion is filed within ten days of the district court's entry of judgment, the motion is treated as a motion to alter or amend the judgment under [FED. R. CIV. P.] 59(e).  *Id.*  Alternatively, if the motion is filed more than ten days after the entry of judgment, it is considered a motion seeking relief from the judgment under [FED. R. CIV. P.] 60(b).  *Id.*[67]

FED. R. CIV. P. 59 and 60 apply to cases under the Bankruptcy Code pursuant to FED. R. BANKR. P. 9023 and 9024.  Although FED R. CIV. P. 59(e) provides a motion to alter or amend a judgment must be filed within 28 days of the entry of the judgment, FED. R. BANKR. P. 9023 shortens the deadline to file motions under Rule 59 to "no later than 14 days after entry of judgment."[68]

The Second Motion to Reconsider was filed on September 6, 2013, almost four months after entry of the Order Denying First Motion to Reconsider, and over a year after the Conversion Order.  Based on the deadlines described above by the Tenth Circuit Court of Appeals, the Court must evaluate the Second Motion to Reconsider under FED. R. CIV. P. 60(b).

---

[65]  *See In re McDonald*, No. 11-35762 MER, 2013 WL 1969266 (Bankr. D. Colo. May 13, 2013).

[66]  *Hatfield v. Bd. of Cnty. Comm'rs*, 52 F.3d 858, 861 (10th Cir. 1995); *see also Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991).

[67]  *Id.* at 861.

[68]  FED. R. BANKR. P. 9023.

1. *FED. R. CIV. P. 60(b)*

Rule 60(b) provides in pertinent part:

(b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.[69]

Relief from judgment under Rule 60(b) falls within the discretion of the Court, but such relief is extraordinary, and should only be granted in exceptional circumstances.[70]

Another division of this Court recently examined the issue of whether a debtor converted his case in bad faith under Rule 60(b)(6) to prevent injustice.[71] In applying Rule 60(b)(6) to the *Marrama* analysis, Chief Bankruptcy Judge Tallman stated:

---

[69] FED. R. CIV. P. 60(b), made applicable to bankruptcy proceedings by FED. R. BANKR. P. 9024.

[70] *LaFleur v. Teen Help*, 342 F.3d 1145, 1153 (10th Cir. 2003); *Amoco Oil Co. v. U.S. Dep't of Env. Protection*, 231 F.3d 694, 697 (10th Cir. 2000); *Bud Brooks Trucking, Inc. v. Bill Hodges Trucking Co.*, 909 F.2d 1437, 1440 (10th Cir. 1990).

[71] *See generally In re Norwood*, No. 12-23027 HRT, 2013 WL 4099834 (Bankr. D. Colo. Aug. 8, 2013).

The leading case is *Klapprott v. United States*, 335 U.S. 601, 614 (1949), in which Mr. Justice Black stated: "In simple English, the language of the 'other reason' clause, for all reasons except the five particularly specified, vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice." The federal courts have generally applied clause (6) liberally whenever modification or vacation of a judgment appeared appropriate to accomplish justice. *See Phelps v. Alameida*, 569 F.3d 1120,1135 (9th Cir. 2009) (Catch-all provision of rule providing grounds for relief from a final judgment, order, or proceeding is "a grand reservoir of equitable power, and it affords courts the discretion and power to vacate judgments whenever such action is appropriate to accomplish justice."); *Fleming v. Gulf Oil Corp.*, 547 F.2d 908, 912 (10th Cir. 1977) ("Like Rule 60(b) generally, clause (6) should be liberally applied to situations not covered by the preceding five clauses so that, giving due regard to the sound interest underlying the finality of judgments, the district court, nevertheless, has power to grant relief from a judgment whenever, under all the surrounding circumstances, such action is appropriate in the furtherance of justice.").[72]

The Court agrees with this analysis, and, within the Rule 60(b)(6) context, the Court will reconsider the bad faith portion of its Order Denying First Motion to Reconsider.

     2.    *Framework for determining whether the Debtors are akin to the "atypical debtor" ineligible to be a Chapter 13 debtor.*

As this Court previously noted, after *Marrama*, eligibility for conversion from Chapter 7 to Chapter 13 under § 706(a) "is dependent on two things: first, whether the debtor is eligible to be a debtor under chapter 13 under 11 U.S.C. § 109(e); and second, whether the case, if converted, would be dismissed under 11 U.S.C. § 1307(c)."[73] The issue of seeking conversion in bad faith is a

---

[72]  *Id.* at *7.

[73]  *McDonald*, 2013 WL 1969266, at *4.

question of fact determined by the totality of the circumstances,[74] and this includes both pre-petition conduct and post-petition conduct.[75]

Here, the Debtors' eligibility under § 109(e) is not at issue, and the Court previously found the Debtors met their burden of proving they are eligible under this statute.  At issue is the second prong of the *Marrama* analysis, focusing on the following: 1) whether Debtors filed their Conversion Motion in good faith pursuant to § 1307(c); and 2) whether Debtors filed their Second Amended Chapter 13 Plan in good faith pursuant to § 1325(a)(3).  A&V bears the burden of proof on whether Debtors filed their Conversion Motion in good faith.[76]  The Debtors bear the burden of proof concerning the elements of § 1325(a),[77] including the issue of whether they filed the Second Amended Plan in good faith under § 1325(a)(3).

---

[74]  *Id.* at *7.  *Gier*, 986 F.2d at 1329 (concluding "in determining whether a Chapter 13 petition has been filed in bad faith under § 1307(c), the bankruptcy court must consider the 'totality of the circumstances.'").

[75]  *Id.* at *7.  For cases examining post-petition conduct, *see, e.g., In re Southern*, No. 10–50713, 2011 WL 1226058, at *2 (Bankr. M.D.N.C. Mar. 29, 2011) (noting debtor failed to cooperate with the trustee post-petition); *In re Rising Tide Enters.*, Nos. 09–21123, 09–21527, 09–21126, 2010 WL 174323, at *3 (Bankr. W.D.N.Y. Jan. 15, 2010) (noting debtor failed to provide court-ordered documentation, failed to appear at a 341 meeting, and brought frivolous motions and adversary proceedings); *In re Splawn*, No. 7–05–19019, 2008 WL 1914253, at *5 (Bankr. D. N.M. Apr. 25, 2008) (noting debtors "have been engineering their financial situation" post-petition to minimize plan payments); *In re Gabriel*, 390 B.R. 816, 821 (Bankr. D. S.C. 2008) (noting debtor spent money of the estate and failed to cooperate with the trustee post-petition); *In re Goines*, 397 B.R. 26, 34 (Bankr. M.D.N.C. 2007) (noting debtor's conduct at her 341 meeting). *But see In re O'Neil*, No. 07–12533, 2008 WL 781866, at *2 (Bankr. D. N.H. Mar. 20, 2008) (inferring in dicta that the Marrama standard may not apply to post-petition conduct). *See also Marrama*, 549 U.S. at 374 (finding "prepetition bad-faith conduct, including fraudulent acts committed in an earlier Chapter 7 proceeding, is tantamount to a ruling that the individual does not qualify as a debtor under Chapter 13.").

[76]  *Id.* at *4 ("[A] party seeking dismissal or conversion of a Chapter 13 case for 'cause' under § 1307(c) has the burden of showing the debtor's lack of good faith based on the totality of the circumstances.") *See, e.g., In re Gier*, 986 F.2d 1326, 1329 (10th Cir. 1993) (following *In re Love*); *In re Love*, 957 F.2d 1350, 1355 (7th Cir. 1992) (stating that burden of showing good faith is not on debtor because unlike section 1325(a)(3), section 1307(c) "does not specifically require that a debtor file a petition in good faith"); *Alt v. United States (In re Alt)*. 305 F.3d 413, 420 (6th Cir. 2002) (the party seeking dismissal has burden to show debtor's lack of good faith); *Sullivan v. Solimini (In re Sullivan)*, 326 B.R. 204, 211 (1st Cir. BAP 2005) ("[U]nder § 1307(c), the objecting creditor has the burden of proof, while under § 1325(a)(3), it is the debtor's burden.").

[77]  *In re Anderson*, 173 B.R. 226, 229 (Bankr. D. Colo. 1993); *Lincoln v. Cherry Creek Homeowners Ass'n (In re Lincoln)*, 30 B.R. 905, 910 (Bankr. D. Colo. 1983).

"The Tenth Circuit has evaluated the determination of good faith at two different stages of a Chapter 13 proceeding: the filing of a Chapter 13 petition and the filing of a proposed Chapter 13 plan."[78]  The *Marrama* Court noted a bankruptcy court's authority to deny conversion for bad faith should be exercised only in "extraordinary cases . . . in light of the fact that lack of good faith in proposing a Chapter 13 plan is an express statutory ground for denying plan confirmation."[79]  The Supreme Court embraced the Seventh Circuit's distinction between the standards for good faith in proposing a Chapter 13 plan under § 1325(a)(3) and for dismissing or converting a case under § 1307(c), which has a more stringent standard for lack of good faith in light of the dire consequences of dismissal.[80]  The Tenth Circuit followed suit in *In re Gier*,[81] employing the Seventh Circuit's reasoning from the *Love* case to determine whether a conversion motion was filed in good faith.  *Gier* remains good law for determining bad faith under § 1307(c) in this Circuit.[82]

In order to determine whether a Chapter 13 plan was filed in good faith under § 1325(a)(3), the Tenth Circuit historically applied the following non-exhaustive list known as the *Flygare* factors:

> (1) the amount of the proposed payments and the amount of the debtor's surplus; (2) the debtor's employment history, ability to earn and likelihood of future increases in income; (3) the probable or expected duration of the plan; (4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court; (5) the extent of preferential treatment between classes of creditors; (6) the extent to which secured claims are modified; (7) the type of debt sought to be discharged and whether

---

[78]  *Norwood*, 2013 WL 4099834, at *11.

[79]  *Marrama*, 549 U.S. at 374-75, n.11.

[80]  *Id.* (citing *In re Love*, 957 F.2d 1350, 1356 (7th Cir. 1992)) ("Because dismissal is harsh . . . the bankruptcy court should be more reluctant to dismiss a petition . . . for lack of good faith than to reject a plan for lack of good faith under Section 1325(a).").  The addition of § 1325(a)(7) by BAPCPA lends further support for the view that a more stringent test should be applied under § 1307(c).  Under § 1325(a)(7), courts have authority to take the less drastic step of denying confirmation of a chapter 13 plan if the petition is not filed in good faith, rather than dismissing the case.  *See* § 1325(a)(7) ("[T]he court shall confirm a plan if the action of the debtor in filing the petition was in good faith.").

[81]  *See In re Gier*, 986 F.2d 1326 (10th Cir. 1993).

[82]  *In re Alexander*, 363 B.R. 917, 925 (10th Cir. BAP 2007) (recognizing *Gier* was "to date the Tenth Circuit's most comprehensive discussion of bad faith *vis a vis* § 1307.").

any such debt is non-dischargeable in Chapter 7; (8) the existence of special circumstances such as inordinate medical expenses; (9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act; (10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and (11) the burden which the plan's administration would place upon the trustee.[83]

Almost thirty years after *Flygare* was decided, the Tenth Circuit in *Cranmer* noted the Bankruptcy Code was amended to include § 1325(b), which subsumed most of the *Flygare* factors and gave the good faith inquiry "a more narrow focus."[84]  Consequently, a bankruptcy court must consider the three *Cranmer* factors, including "whether the debtor has stated his debts and expenses accurately; whether he has made any fraudulent misrepresentation to mislead the bankruptcy court; or whether he has unfairly manipulated the Bankruptcy Code."[85]  This Court also notes that proposing a Chapter 13 plan in good faith under § 1325(a)(3) is a factor to consider in the totality of the circumstances analysis under § 1307(c); however, it is not a stand-alone issue in the context of dismissal under § 1307(c) for alleged bad faith conversion to Chapter 13.[86]  Clearly, there is overlap between certain factors analyzing these provisions of the Bankruptcy Code.

In the Second Motion to Reconsider, A&V seeks reconversion to Chapter 7 primarily because the Debtors did not file their Second Amended Plan in good faith as required under § 1325(a)(3).  A&V also asserts reconversion to Chapter 7 is proper "for cause" because the Debtors filed their Conversion Motion in bad faith under § 1307(c).  In this Court's view, a comprehensive approach to the second *Marrama* prong makes the most sense in the instant matter because both the Conversion Motion and the Second Amended Plan have been challenged as being filed in bad faith.  Thus, the Court will follow the approach of the *Norwood* court, and apply the factors as set forth in *Flygare*, *Cranmer* and

---

[83]  *In re Cranmer*, 697 F.3d 1314, 1318-19 (10th Cir. 2012) (citing *Flygare v. Boulden*, 709 F.2d 1344, 1347-48 (10th Cir. 1983)).

[84]  *Id.* at 1319, n.5.  *See also In re McGehan*, 495 B.R. 37, 42 (Bankr. D. Colo. 2013) (determining the "more narrow focus" applied by the Eight Circuit over the past 25 years applies here in the Tenth Circuit.).

[85]  *Id.  See also Robinson v. Tenantry (In re Robinson)*, 987 F.2d 665, 668 n.7 (10th Cir. 1993).

[86]  *See Marrama*, 549 U.S. at 375 n.11, 381-82; *see also Love*, 957 F.2d at 1355-56.

*Gier* as appropriate to determine whether the Debtors filed their Conversion Motion and Second Amended Plan in good faith.[87]

    *3. The Debtors did not file their Conversion Motion in good faith.*

  *Marrama*'s pragmatic approach permits the Court to consider non-exhaustive factors "for cause" under  § 1307(c).[88]  Evidence of inaccurately prepared schedules and financial statements, or false testimony at the meeting of creditors or a Rule 2004 examination, are encompassed in the totality of the circumstances determination for conversion under § 1307(c).[89]  However, material misstatements and other attempts to "mislead the bankruptcy court or manipulate the bankruptcy process,"[90] rather than mistake or excusable neglect, should be the focus of such an inquiry.[91]  Mindful of  the Supreme Court's approach, the Court will apply the Tenth Circuit's *Gier* factors to the facts of this case.  As set forth immediately below, the Court concludes A&V has met its burden of demonstrating the Debtors filed their Conversion Motion in bad faith pursuant to § 1307(c), and cause exists to reconvert their case to Chapter 7.

    a. <u>The nature of the debt, including the question of whether the debt would be nondischargeable in a Chapter 7 proceeding.</u>

  Here, the Debtors received their discharge during their Chapter 7 case, and no adversary proceedings have been filed seeking to revoke the discharge under § 727, or seeking to except any debts from discharge under § 523.  Although the Debtors sought to vacate the discharge–without any authority supporting their position–this request was denied.  Moreover, the Debtors' student loan debt owed to Department of Education/Federal Loan Servicing is not dischargeable by operation of § 523(a)(8).  The Court also looks to the nature of the Debtors' debt owed to A&V as allowed administrative priority claim under § 503(b)(1)(A) and (b)(2), and § 507(a)(1)(C).  But for the efforts of

---

[87]  *Norwood*, 2013 WL 4099834, at *12 (considering all the factors from *Flygare*, *Cranmer*, and *Gier* to determine whether the debtor filed his conversion motion and Chapter 13 plan in good faith).

[88]  *See Marrama v. Citizens Bank of Mass. (In re Marrama)*, 430 F.3d 474, 482 (1st Cir. 2005) (citing *Sullivan v. Solimini (In re Sullivan)*, 326 B.R. 204, 212 (1st Cir. BAP 2005))

[89]  *Id.*

[90]  *Id.*

[91]  *See In re Odette*, 347 B.R. 60, 65 (Bankr. E.D. Mich. 2006); *Condon v. Smith (In re Condon)*, 358 B.R. 317, 328-29 (6th Cir. BAP 2007).

A&V, the Debtors would not have been forced to amend Schedules to reflect proper values and disclose assets not preciously listed.

### b.    The timing of the Conversion Motion.

The Debtors filed their Conversion Motion within one month after Weinman conducted the 2004 examinations of David and The Colorado Agency. Furthermore, the Conversion Motion came only eight days after Weinman filed his Motion to Compel, seeking the turnover of 1) certain documents not produced at the 2004 examinations, 2) the non-exempt portion of all Renewal Commissions, New Business Commissions, and Endorsement Commissions on work performed by David pre-petition but received by the Debtors post-petition and/or payable in the future, and 3) David's share of his interest in The Colorado Agency and the book of business so both could be sold for the benefit of the Estate.  Thus, the timing of the Conversion Motion indicates the motion was filed to avoid turning over this information and these assets, and therefore, was filed in bad faith.

### c.    How the debt arose.

The subject debt owed to A&V arose from the pursuit of assets for the benefit of the Estate, which served as a catalyst for the Debtors to amend their Schedules and Statement of Financial Affairs to rectify the inaccuracies and omissions in their initial filing.  A&V was approved as general counsel to represent Weinman under § 327(a) in connection with "(1) questions arising out of the conduct of the administration of the Estate and concerning [Weinman's] rights and remedies with regard to the Estate's assets; (2) investigating, locating, and marshalling [sic] of Estate's assets; and (3) preparing any pleadings, notice and/or orders as required for all of the above."[92]  A&V drafted and prosecuted the motions for the Rule 2004 examinations and production of documents, conducted the Rule 2004 examinations, and drafted and prosecuted the First Motion to Reconsider.  These actions benefitted the Estate, and assisted to uncover the existence of a book of business and other valuable assets for the Estate, including commissions owed to David earned pre-petition but to be paid post-petition.

### d.    The Debtors' motive in filing the petition.

The timing of Debtors' Conversion Motion is suspicious, particularly in conjunction with the Debtors' post-petition conduct of repeatedly violating Court

---

[92]  Application to Employ A&V as Counsel (Docket No. 30).  The Court approved Weinman's employment of A&V under the terms of the Application.  *See* Order Approving Application to Employ (Docket No. 31).

orders requiring the Debtors to turnover documents to the Chapter 13 Trustee and A&V.  As of September 9, 2013, the Court had "ordered the Debtors to produce copies of all detailed bank statements for all accounts on three separate occasions. . . . The Debtors failed to comply with the first two orders, and according to A&V, the Debtors have not complied with the latest order."[93]  When the Court issued its Order Denying First Motion to Reconsider, the evidence at that time (David's un-rebutted testimony) suggested the Debtors had informed Tirella of their assets and corresponding values, but by attorney error these assets and values were not included with the Debtor's initial filing.  Further, through the efforts of Morris, the Debtors appeared to have provided Weinman with some documentation responsive to his document requests, albeit long after the documents were due.  Through Morris, the Debtors also amended their Schedules to reflect their assets and corresponding values.  However, the Debtors subsequent actions after their second attorney withdrew, including failing to produce documents and changing positions on valuation and percentage of ownership in the Estate's largest assets, strongly indicate the Debtors' motive in filing the Conversion Motion was to thwart administration of the Estate.  Based on the totality of the circumstances, the Court now believes the Debtors do not have (and never had) an honest intention to repay their creditors.

> e.    How the Debtors' actions affected creditors.

There is no question the Debtors' conversion to Chapter 13 increased the expenses of this proceeding and created a substantial delay in any recovery to creditors.  A&V's administrative priority claim in the amount of $44,388.56 only reflects its fees and costs incurred from the date A&V was hired through the date the Court issued its Order Denying First Motion to Reconsider.  This claim reflects the thousands of dollars in legal expenses and hundreds of hours dealing with Debtors' failure to adequately disclose assets, and the Debtors' efforts to delay recovery to creditors by converting this case to Chapter 13.  The Debtors did not turn over the documentation ordered by this Court in connection with the Rule 2004 examinations, and when Weinman pressed the issue in his Motion to Compel, the Debtors filed the Conversion Motion.  In addition, the Debtors continued to conceal and refuse to turn over documentation after the Conversion Order entered in violation of this Court's orders.  The bank statements that were finally provided supported A&V's higher value for the book of business, and based on the evidence presented, should lead to a larger recovery for creditors in a Chapter 7 upon reconversion.  Thus, the Debtors caused a serious and substantial delay in any distribution to creditors, and administration of the Estate will be in better hands in Chapter 7.

---

[93]  Order Setting Hearing on Second Motion to Reconsider dated September 9, 2013 (Docket No. 187).

   f. <u>The Debtors' treatment of creditors both before and after the petition was filed</u>.

  Treatment of creditors greatly worsened after conversion of this case to Chapter 13 and return of control of the Estate to the Debtors.  Before the Debtors filed their Conversion Motion, Weinman had filed a Notice of Possible Dividends and had taken appropriate actions to pursue assets for the benefit of the Estate.  Based on the documents finally produced to A&V and the Chapter 13 Trustee, A&V believes the minimum distribution to creditors would have been $152,000 in a Chapter 7 within one year.  After payment of any administrative expenses and priority claims, A&V asserts unsecured creditors would have received an approximate $70,000 distribution for the benefit of unsecured nonpriority claims in the aggregate amount of $170,514.

  In contrast, after converting the case, the Debtors have offered the following to unsecured creditors in their proposed plans based on their misstated and fluctuating values of assets:

- The Debtors' initial Plan proposed to pay unsecured creditors the total amount of $51,313 over five years.

- The Debtors' First Amended Plan reduced the distribution to unsecured creditors from $51,313 to $3,065 over five months.

- The Debtors' Second Amended Plan increased the distribution to unsecured creditors from $3,065 to $87,766 and increased the commitment period from five months to three years.

- The Debtors' Third Amended Plan reduced the distribution to unsecured creditors from $87,766 to $406 over five years.

There is no question if the Debtors had their way, creditors would receive far less under their proposed Chapter 13 plans than in Chapter 7.  The Debtors' Second Amended Plan provided for over $70,000 for Class 4, only because the Debtors had switched positions, claiming David owned 100% of The Colorado Agency.  The Debtors then reversed this position yet again at the last hearing held in this matter on October 17, 2013.  Thus, the Court finds the Debtors' creditors are worse off in a Chapter 13 than if the case were reconverted to Chapter 7.

g.     Whether the Debtors has been forthcoming with the
bankruptcy court and creditors.

The Debtors have been anything but forthcoming with the Court, the Chapter 13 Trustee, Weinman, and A&V.  As noted, the Debtors have changed positions on asset values and percentage ownership, income, and expenses countless times.  The Debtors have shown their statements made under the penalty of perjury in pleadings and on the record are unreliable and cannot be trusted.  Further, the Debtors violated Court orders on multiple occasions and have abused the bankruptcy process to the detriment of their creditors.  The Debtors are also on their third legal counsel in this matter, which raises yet another red flag.

During their investigation, Weinman and A&V discovered multiple issues with the Debtors' initial filing.  As set forth in the Court's Order Denying First Motion to Reconsider, the Debtors previously attributed to their former counsel the inaccuracies and omissions, and their failure to respond adequately to Weinman's document requests.  The Court gave the Debtors the benefit of the doubt, and accepted the Debtors' scapegoat argument based on the evidence before it at the time.[94]  However, the Debtor's *pro se* post-conversion conduct forces this Court to reevaluate this finding.

The investigation during the Chapter 7 case revealed the Debtors undervalued assets and income that could be administered for the benefit of creditors.  Rather than cooperate with the investigation, the Debtors moved to convert this case to Chapter 13.  The Debtors have continued to misstate their income and expenses, and undervalue assets, directly affecting the proposed return to creditors.  For example, the Debtors have repeatedly changed positions on the value of the book of business, the percentage ownership in The Colorado Agency, the costs of sale for the book of business, and David's earnings from monthly commissions (the Debtors' sole source of income).  The Debtors have amended their Schedules on three different occasions, with the most recent amendments filed in October, 2013, containing inconsistent valuations.  In addition, post-conversion, the Debtors knowingly delayed the production of documents and full financial disclosure, citing no legitimate reason for their delays.  The Court finds the Debtors have been anything but honest and transparent throughout this bankruptcy case and are undeserving of continuing in Chapter 13.

Moreover, the Debtors' conduct exhibited after the Order Denying First Motion to Reconsider further supports the conclusion the Debtors are to blame for initially understating asset values, incorrectly stating income and expenses,

---

[94]   *See McDonald*, 2013 WL 1969266.

omitting assets of the Estate, and concealing documentation they were ordered to produce.  During the time the Debtors proceeded *pro se*, without counsel to blame, the Debtors offered no viable explanation for their continued inconsistent statements before this Court or their failure to comply with Court orders.  Creditors have already waited far too long for a distribution in this bankruptcy case.  The Court will not allow the Debtors to continue to delay a distribution to creditors.

In weighing the *Gier* factors, and based on the totality of the circumstances in this case, the Court concludes A&V has satisfied their burden of showing the Debtors filed their Conversion Motion in bad faith pursuant to § 1307(c).  Therefore, the Court will reconvert this case to Chapter 7.

> 5.    *The Debtors did not file their Second Amended Plan in good faith.*

The Court further finds reconversion appropriate because, after conversion to Chapter 13, the Debtors began exhibiting conduct before this Court resembling that of an "atypical" debtor, undeserving of relief afforded to good faith debtors.  After considering the arguments of counsel, the evidence presented and the Court's records, the Court finds the *Cranmer* and *Flygare* factors are indicative of the Debtors' bad faith in filing the Second Amended Plan in this case.

> a.    Whether the Debtors have stated their debts and expenses accurately.

The Debtors amended their Schedules on three different occasions after their initial filing, and only when represented by counsel.[95]  Although amending schedules is generally not objectionable, the degree of changes causes concern.  With respect to income, the Debtors' initial Schedules I and J state David earns income in the amount of $4,259.20 per month, and the Debtors have monthly expenses of $4,480.  According to the Debtors' Amended Schedules I and J filed July 10, 2012, David's monthly income is $9,057.66, and the Debtors' expenses increased to $8,444.55.  The Debtors did not list any commissions held by The Hartford in their initial Schedule B, but later stated The Hartford was holding $9,100 for The Colorado Agency.[96]  Mysteriously, after the Court ordered The Hartford to hold these funds, the Debtors filed their Amended Schedule B stating

---

[95]  Initial Schedules filed October 31, 2011 (Docket No. 1); Amended Schedules A, B, C, I and J filed July 10, 2012 (Docket No. 53); Amended Schedules A, B, D, G and J filed September 11, 2013 (Docket Nos. 188-191); and Amended Schedules B and C filed October 1, 2013 (Docket No. 206).

[96]  *Compare* Initial Schedule B filed October 31, 2011 (Docket No. 1) with Amended Schedule B filed July 10, 2012 (Docket No. 53).

The Hartford was only holding $2,700.43 in post-petition funds.[97]  More troubling, in the Debtors' Amended Schedule J filed July 10, 2012, and the most recent Amended Schedule J filed September 11, 2013, they list a $1,700 projected monthly expense for their mortgage payment.  However, the Second Amended Plan indicates their primary residence was surrendered on January 1, 2012.  Further, the Debtors also list business expenses, ranging from $0 to $3,450.55 per month depending on which pleading is to be believed.  The inconsistency in these figures makes it impossible for the Court to determine the legitimacy of the Debtors' proposed plan payments.

The four different proposed Chapter 13 plans also offer little help for the Debtors.  The Debtors' Chapter 7 Reconciliation shows Class 4 general unsecured creditors would receive $87,530 if Debtors' case was a Chapter 7 case.  However, the Second Amended Plan only proposes to pay these claims $43,377.  The Debtors' Second Amended Plan also fails to provide for the Department of Education/Federal Loan Servicing student loan claim, or properly provide for A&V's administrative priority claim.  These claims must be properly addressed and accounted for in the Second Amended Plan, or there is no adequate means for unsecured creditors to calculate their pro rata distribution in Class 4.  As a result, the Second Amended Plan fails to disclose the resulting adverse effect on unsecured, and possibly other, creditors.  The Debtors cannot simply ignore the existence of these claims.  The Second Amended Plan's statements of debts, expenses and percentage repayment of unsecured debt remain inaccurate.  The Court therefore finds that this factor weighs against the Debtor.

> b.   Whether the Debtors have made any fraudulent misrepresentations to mislead the Court.

As previously discussed in connection with the seventh *Gier* factor, the Debtors made fraudulent misrepresentations to this Court.  The Debtors disclosed an interest in The Colorado Agency in their Statement of Financial Affairs, but did not specify a percentage of ownership.  The Debtors also disclosed Koslowski as a 50% "partner," but did not identify the business of which he was a partner.  In their initial Schedule B, the Debtors did not disclose David's book of business or his 50% interest in The Colorado Agency.  After the book of business was discovered by Weinman, and the Debtors included this asset in their Amended Schedules, the Debtors continued to change the valuation of the book of business, the percentage interest in the book, and the percentage interest in The Colorado Agency. When the Debtors were *pro se*, David took the false position Kozlowski was not a shareholder of The Colorado

---

[97]  Amended Schedule B filed September 11, 2013 (Docket No. 188); Amended Schedule B filed October 1, 2013 (Docket No. 206).

Agency, and had never been a shareholder of The Colorado Agency.  The Debtors later recanted, admitting Kozlowski had a 50% interest in The Colorado Agency.

On August 12, 2013, the Debtors clearly misstated they had complied with the Court's Order dated July 8, 2013, and produced the requested bank statements and The Hartford accounting to the Chapter 13 Trustee and A&V. This statement was not true, as evidenced by the need for several orders and hearings on this issue.  The Court finds the Debtors were not honest with the Court, the Chapter 13 Trustee, Weinman, or A&V regarding the state of their financial affairs.  These Debtors violated three orders compelling the production of documents to protect creditors for the Debtors dissipating assets.  The Court was forced to intervene and compel the Debtors to comply with the requested document production.  For these reasons, and the reasons discussed above, the Court finds the Debtors have not been forthcoming during their Chapter 13 case.

c.   <u>Whether  the Debtors have unfairly manipulated the Bankruptcy Code.</u>

The Court has noted on the record the Debtors have engaged in gamesmanship during their Chapter 13 case.  The Debtors' post-conversion antics in this case, including the willful failure to comply with Court orders, and the Debtors' inaccurate statements regarding asset values, income, and expenses, reflect a conscious disregard for the authority of this Court and a recalcitrance and lack of respect for the bankruptcy process.  The Court has provided more than enough opportunity for these Debtors to propose a confirmable Chapter 13 plan, but the Debtors continue to file plans fraught with inconsistency, which cannot be confirmed.

Notably, on March 21, 2014, the Chapter 13 Trustee also filed a motion seeking reconversion of this case to Chapter 7 for cause under § 1307(c)(4).[98] The Chapter 13 Trustee alleges she has not received a plan payment from the Debtors since October 9, 2013, and the Debtors are substantially in default on their payments in the aggregate amount of $3,750.  While the Chapter 13 Trustee's motion is moot as a result of this Order, the Court cannot ignore the fact the Debtors have failed to make any payments under the Second Amended Plan (or any other proposed plan for that matter) over the last five months.  The Debtors clearly do not take this matter seriously.

In this Court's view, the Debtors' conversion to Chapter 13 was nothing more than a hollow attempt to regain control over assets of the Estate, with no

---

[98] Chapter 13 Trustee's Motion to Reconvert Case, Docket No. 215.

honest effort to use these assets to repay their creditors.  The Debtors' conduct has substantially delayed any distribution to creditors, while also needlessly wasting the time and resources of this Court and unnecessarily increasing the legal fees and expenses for all parties involved.  Thus, the Court finds the Debtors have indeed unfairly manipulated the Bankruptcy Code.

        d.      The amount of the proposed Chapter 13 payments and the amount of the Debtors' surplus.

The Debtors filed their most recent Amended Schedule J and their Second Amended Plan on September 11, 2013. The Debtors claimed a surplus of $750.11 per month and committed to make 59 tiered monthly plan payments ranging from $107.14 per month to $865.00 per month.  Even ignoring the fact the Debtors have included a monthly house expense of $1,700 for property they surrendered, the Second Amended Plan failed to provide for all of David's projected disposable income to be applied to paying unsecured creditors as required by § 1325(b)(1)(B).  Given the Debtors' inconsistent representations throughout this case, the Court cannot determine Debtors' actual income and expenses with any certainty.  Further, the Second Amended Plan fails to account for a significant unpaid administrative priority claim (in excess of $44,000), or for student loans (in excess of $4,000) that must eventually be repaid.

        e.      The Debtors' employment history, ability to earn and likelihood of future increases in income.

The Debtors' sole source of income is David's employment with The Colorado Agency.  If, in a Chapter 7, Weinman successfully sold the Debtors' book of business and his 50% interest in The Colorado Agency, the Debtors ability to fund a Chapter 13 plan would not exist.  In addition, David has maintained throughout this case that the value of his book of business is declining.  If this assertion is true, then the Court could not find David has a reasonable likelihood of a future increase in income.

        f.      The probable or expected duration of the plan.

The duration of the Second Amended Plan is not easily determined.  As previously discussed, the Second Amended Plan provides for payments over 60 months, but the number of payments listed only covers 59 months.  The Second Amended Plan only provides for a 36 month commitment period for payments to Class 4 creditors.  This is inconsistent with a five-year plan, and the duration and expected distribution under the Second Amended Plan is inadequate to satisfy the requirements of § 1325.  Further, the Debtors' inaccurate valuation of assets and the $44,153 shortfall between the Debtors' Chapter 7 Reconciliation and proposed payments to Class 4 in the Second Amended Plan

cause concern.  The Court finds the Second Amended Plan does not provide a larger distribution to creditors than they would receive under Chapter 7 as required by § 1325(a)(4).

g. <u>The accuracy of the Second Amended Plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court</u>.

This factor was subsumed by the first and second *Cranmer* factors discussed above.  The Court incorporates those findings for this factor.

h. <u>The extent of preferential treatment between classes of creditors</u>.

As drafted, the Second Amended Plan discloses the administrative priority claim for A&V, but treats this claim as an unsecured Class 4 claim to share in any distribution to Class 4.  This alone reflects an unfair preferential treatment for the other administrative claimants (i.e. Debtors' counsel).

i. <u>The extent to which secured claims are modified</u>.

This factor is inapplicable because the Second Amended Plan does not provide for any secured claims.

j. <u>The type of debt sought to be discharged and whether any such debt is non-dischargeable in Chapter 7</u>.

The Second Amended Plan improperly states the Debtors are eligible for a discharge in Chapter 13.  As previously discussed, the Debtors received their discharge under Chapter 7 on March 15, 2012.  Pursuant to § 1328(f), the Debtors are not eligible for a discharge through the Second Amended Plan.  In addition, the Debtors' student loan debt to the Department of Education/Federal Loan Servicing is non-dischargeable, and Second Amended Plan does not fully provide for all administrative expense claims.

k. <u>The existence of special circumstances such as inordinate medical expenses</u>.

This factor is inapplicable to the Debtors' bankruptcy case.

l.     <u>The frequency with which the debtor has sought relief under the Bankruptcy Reform Act</u>.

This factor is inapplicable because the Debtors have only filed for relief under the Bankruptcy Code one time.

m.     <u>The motivation and sincerity of the Debtors in seeking Chapter 13 relief</u>.

As set forth in detail above, the Court finds a myriad of evidence supporting the conclusion the Debtors sought conversion of this case to Chapter 13 to stymie efforts of Weinman and A&V to recover assets for the benefit of the Estate.  The Debtors have failed to comply with some of the most basic requirements of the Bankruptcy Code, namely filing a Chapter 13 plan that could conceivably be confirmed on its face, and engaging in a meaningful, honest, and transparent process of full disclosure in exchange for a discharge.  The negative motives of the Debtors are set forth at length in this Order, and need not be reproduced here.

n.     <u>The burden which the Second Amended Plan's administration would place upon the Chapter 13 Trustee</u>.

The Chapter 13 Trustee's objection to confirmation of the Second Amended Plan asserts, *inter alia*, the Second Amended Plan cannot be administered as written.  Further, the Debtors have not made a plan payment since October 2013, and have not demonstrated any genuine effort to propose a confirmable Chapter 13 plan.  If the Court were to allow the Debtors to proceed in Chapter 13, the Chapter 13 Trustee would have the same burdensome task of the former Chapter 7 trustee–sifting through financials to rectify the Debtors' inconsistent statements of income and expenses, and valuation of assets.  Even if the Debtors suddenly began cooperating with the Chapter 13 Trustee, which this Court doubts the Debtors will do, the Chapter 13 Trustee has already filed a separate motion seeking reconversion of this case for the Debtors' failure to make plan payments in violation of the Bankruptcy Code.  In any event, this Court concludes the Chapter 13 Trustee would be substantially burdened in administering this bankruptcy case.

After considering the evidence and the record, the Court finds the applicable *Cranmer* and *Flygare* factors as applied to this case are indicative of the Debtors' bad faith in filing the Second Amended Plan.  Thus, the Court finds in favor of reconverting this case to Chapter 7 pursuant to § 1325(a).

## CONCLUSION

Based on the totality of the circumstances, the Court shall grant the Second Motion to Reconsider pursuant to Rule 60(b) in the interests of justice because this case presents the extraordinary and exceptional circumstances warranting such relief under Rule 60(b) and *Marrama*.[99]  Consistent with the Tenth Circuit's mandate in *Fleming*, relief under Rule 60(b) is appropriate here in light of the evidence presented, the Court's review of the pleadings filed in the case, and the Debtors' bad faith conduct.  The Court reaches this conclusion based on an objective view of equity and good conscience demanding that this case be reconverted to Chapter 7.

As set forth herein, the Court finds three independent grounds warranting reconversion of the Debtors' bankruptcy case to Chapter 7.  The Debtors are prohibited from proceeding under Chapter 13 of the Bankruptcy Code because 1) they failed to comply with this Court's Orders, 2) the Debtors filed their Conversion Motion in bad faith, and 3) the Debtors filed their Second Amended Plan in bad faith.  Accordingly,

IT IS ORDERED the Second Motion to Reconsider (Docket No. 184) is GRANTED.  The Court's Order Denying First Motion to Reconsider is hereby superceded by this Order.  The Debtors' *Motion to Convert Case to Chapter 13 Pursuant to 11 U.S.C. § 706(a)* has been reconsidered under Rule 60(b), and is hereby DENIED.  A separate order reconverting the case to Chapter 7 will enter.

IT IS FURTHER ORDERED the Debtors shall turnover to Weinman within ten (10) days from the date of this Order, complete and unredacted copies of all detailed bank statements showing itemized monthly transactions for the period from September 1, 2013 through the date of this order, for any and all accounts held by the Debtors, The Colorado Agency, or any other entity which either Debtor has an interest, whether such account are held jointly or separately, including but not limited to the Guaranty Bank & Trust accounts ending in "1975" and "1496."

IT IS FURTHER ORDERED the Debtors shall provide to Weinman within ten (10) days from the date of this Order, an updated accounting showing any and all post-petition funds payable from The Hartford.

IT IS FURTHER ORDERED the Hartford, which is currently holding all funds for The Colorado Agency per this Court's Minute Order dated July 8, 2013 (Docket No. 155), is authorized to disburse any funds held for the Debtors or

---

[99]  *See McDonald*, 2013 WL 1969266, at *6; *Norwood,* 2013 WL 4099834, at *18.

The Colorado Agency directly to Weinman upon his request for the benefit of the Debtors' bankruptcy estate.

Dated March 31, 2014                         BY THE COURT:

                                             Michael E. Romero
                                             United States Bankruptcy Judge